State ex rel. Cities Service Oil Company, Appellant, v. Board of Appeals (and members thereof), Respondents: Modern Car Wash, Inc., and another, Impleaded, Appellants: Post, Intervenor, Respondent.*

*October 30—November 26, 1963.*

---

* Motion for rehearing denied, without costs, on February 4, 1964.

518

" . . .

For the appellant Cities Service Oil Company there were briefs by *Hanley, Wedemeyer & Cavanaugh,* attorneys, and

*John M. Hanley* and *Robert F. Cavanaugh* of counsel, all of Milwaukee, and oral argument by *John M. Hanley.*

For the appellants Modern Car Wash, Inc., and Milwaukee Car Wash, Inc., there were briefs and oral argument by *Harry W. Theuerkauf* of Milwaukee.

For the respondents Board of Appeals and members thereof there were briefs by *John J. Fleming,* city attorney of the city of Milwaukee, and *Cornelius J. Merten,* assistant city attorney, and oral argument by *Mr. Merten.*

For the respondent Post, there was a brief by *Grootemaat, Cook & Franke,* attorneys, and *Robert E. Cook* of counsel, all of Milwaukee, and oral argument by *Robert E. Cook.*

CURRIE, J. These appeals raise the following pertinent issues:

(1) Does the defendant Board of Appeals possess the power to revoke a building permit issued by the city building inspector?

(2) Did the relators make expenditures in reliance upon the validity of the permit so as to acquire vested rights therein which would prevent the board from thereafter revoking the permit?

(3) Was the appeal to the board by Post, a nearby property owner, fatally defective with respect to timeliness, adequately stating the ground of appeal, or failure to pay required filing fee?

(4) Was the Board of Appeals without jurisdiction to proceed because of alleged defects in the published notices of the hearings called to consider the appeal?

(5) Did the board commit prejudicial error in the manner in which the minutes of its proceedings were kept and made available to public inspection?

(6) Did the board commit prejudicial error by holding executive sessions, or by taking any action at such executive sessions?

(7) Were there such absences from meetings on the part of individual board members as to disqualify them from participating in the final decision revoking the permit?

(8) Did a subsequent change in the applicable zoning ordinance render the proceeding before the board moot?

(9) Does the revocation of the permit constitute a discriminatory enforcement of the applicable zoning ordinance so as to violate the constitutional rights of the relators?

### *Power of Board to Revoke Building Permit.*

The appellants advance two reasons in support of their contention that the Board of Appeals was without authority to revoke the building permit. First, they contend that it does not possess this power under the provisions of pars. 7 and 8 of sec. 62.23 (7) (e), Stats. 1959. Secondly, they maintain that, even if a board of appeals organized pursuant to sec. 62.23 (7) (e) does possess this power, the instant Board of Appeals was not so organized.

In contending that a board of zoning appeals generally does not possess the power to revoke a building permit, appellants quote this statement appearing in State ex rel. *Tingley v. Gurda* (1932), 209 Wis. 63, 68, 243 N. W. 317:

"It has been held that zoning boards of adjustment are not created as appellate bodies, and that legal or constitutional questions involved in zoning requirements are not a subject matter for the determination of such boards, but must be presented for consideration to the proper legal forum. It seems that, generally, their powers of review are limited to practical difficulties, or unnecessary hardship, in the way of carrying out the strict letter of the law. *Municipal Gas Co. v. Nolan*, 121 Misc. 606, 201 N. Y. Supp. 582; *Losick v. Binda*, 102 N. J. L. 157, 130 Atl. 537; *Builders' Realty Corp. v. Bigelow*, 102 N. J. L. 433, 131 Atl. 888."

When the *Tingley Case* arose, the powers of the board of appeals were found in sec. 62.23 (8) (b), Stats. 1929. Subsequently the statutory language was greatly amended. Not only does par. 7 of sec. 62.23 (7) (e), Stats. 1959, provide that the board of appeals has power, "To hear and decide appeals where it is alleged there is error in any order, . . . decision or determination made by an administrative official in the enforcement of this section," but par. 8 of sec. 62.23 (7) (e) has been added which provides:

"In exercising the above mentioned powers such board may, in conformity with the provisions of such section, reverse or affirm, wholly or partly, or may modify the order, requirement, decision or determination appealed from, and may make such order, requirement, decision or determination as ought to be made, and to that end shall have all the powers of the officer from whom the appeal is taken, and may issue or direct the issue of a permit."

In *Ostrowsky v. Newark* (1928), 102 N. J. Eq. 169, 139 Atl. 911, the court had before it a New Jersey zoning statute dealing with the powers of the board of appeals couched in substantially the same language as par. 8 of sec. 62.23 (7) (e), Wis. Stats. 1959. The New Jersey court held that under such statute the board of appeals possessed the power to revoke a building permit. We are of the opinion that par. 8 of sec. 62.23 (7) (e) clearly confers such power upon a board of appeals constituted pursuant to sec. 62.23 (7) (e).

Sec. 62.03, Stats., was enacted in 1921, and has remained unamended in its original form to the present time. This statute provides:

"(1) The provisions of chapter 62 of the statutes shall not apply to cities of the first class under special charter.
"(2) Any such city may adopt by ordinance the provisions of chapter 62 of the statutes or any section or sections thereof, which when so adopted shall apply to such city."

Milwaukee is a city of the first class. On October 15, 1923, its common council enacted an ordinance, sec. 1 of which provided:

"Section 62.23 of the Statutes of the State of Wisconsin, relating to the Public Land Commission, is hereby adopted by the Common Council and made applicable to the City of Milwaukee."

Sec. 62.23, Stats. 1923, was entitled "City planning" and among other things authorized cities to enact zoning ordinances which would regulate the location of industries and restrict the use of buildings in certain districts. It also authorized a five-member board of appeals. Nowhere does the ordinance specifically refer to a public land commission. The 1923 statute which authorized the creation of a board of public land commissioners is sec. 27.11, Stats. 1923. Sub. (14) of sec. 62.23, Stats. 1923, relates to special assessments for street improvements, bridges, memorial grounds, parks and playgrounds, and provides that the plan for these may be adopted either under sec. 62.23 or sec. 27.11. The words of the October 15, 1923, ordinance "relating to the Public Land Commission" does create an ambiguity. However, we cannot interpret this ordinance as only adopting sub. (14) of sec. 62.23, Stats. 1923, or hold that the ordinance mistakenly referred to sec. 62.23 instead of sec. 27.11. The preamble states that its purpose was to "adopt certain sections of the general charter law according to the provisions of section 62.03 of the statutes of the State of Wisconsin." In case of ambiguity it is proper to resort to the preamble to ascertain legislative intent. *Smith v. Brookfield* (1956), 272 Wis. 1, 74 N. W. (2d) 770. Sec. 62.03 is entirely inapplicable to any section of the statutes not found in ch. 62, Stats., the General Charter Law. In order to avoid an absurd result we hold that the words "relating to the Public Land Commis-

sion" do not qualify or restrict the preceding language whereby the common council of the city adopted sec. 62.23.

We determine that where a city of the first class, pursuant to sec. 62.03, Stats., by ordinance adopts a particular section of ch. 62, Stats., the General Charter Law, such adoption embraces any subsequent amendment which the legislature may thereafter make in the adopted statute which is not wholly incompatible with such statute as it stood at the time the adopting ordinance was enacted. Cf. *George Williams College v. Williams Bay* (1943), 242 Wis. 311, 316, 7 N. W. (2d) 891. Here the legislature by ch. 203, Laws of 1941, repealed certain subsections of sec. 62.23, Stats. 1939, and created new subsections to take their place. The provisions relating to the board of appeals, which were formerly found in sub. (8), were placed in newly created sub. (7) (e).

It is well settled that the effect of the repeal of a statute and its re-enactment at the same time in substantially the same words is to continue the statute in uninterrupted operation. *E. L. Husting Co. v. Milwaukee* (1930), 200 Wis. 434, 437, 228 N. W. 502; *State ex rel. Ohlenforst v. Beck* (1909), 139 Wis. 37, 39, 40, 119 N. W. 300; and *State v. Gumber* (1875), 37 Wis. 298, 303. This principle is applicable here to the extent that both before and after the enactment of ch. 203, Laws of 1941, a five-member board of appeals was authorized by sec. 62.23, Stats. 1939 and 1941.

While extensive changes were wrought as a result of the enactment of ch. 203, Laws of 1941, none of them were so incompatible with sec. 62.23, Stats. 1939, so as to terminate the operation of Milwaukee's adopting ordinance of October 15, 1923. The effect is the same as if these changes had been made by simple amendment without repeal. We deem it immaterial that the device of repeal, with simultaneous creation of compatible new provisions, was used to accomplish the amending process.

Prior to the 1941 changes in sec. 62.23, Stats., the common council of a city was authorized to create a board of appeals by resolution while thereafter such a board could only be created by city ordinance. See sec. 62.23 (8), Stats. 1939, and sec. 62.23 (7) (e), Stats. 1941. Therefore, because Milwaukee's then existing board of appeals had been created by resolution the common council on June 14, 1943, enacted an ordinance creating a new board of appeals. For reasons already stated this ordinance was sufficient to clothe the instant Board of Appeals with the statutory powers set forth in pars. 7 and 8 of sec. 62.23 (7) (e), Stats. 1959.

*Claim of Vested Rights in Building Permit.*

Appellants contend that both Modern and Cities Service made expenditures of money in reliance on the building permit of February 2, 1961, and that such expenditures gave them vested rights in the permit that precluded the Board of Appeals from legally revoking it. Modern's claimed expenditures were $2,690 paid to the architect who drew the plans for the addition and $500 as a down payment on the car-wash conveyor equipment contracted for. Cities Service's expenditures involved the installation of two additional 10,000 gallon gasoline storage tanks in anticipation of the increased volume of gasoline sales which would result from having the conveyor car wash.

Appellants place great reliance upon this court's citation in *State ex rel. A. Hynek & Sons Co. v. Board of Appeals* (1954), 267 Wis. 309, 315f, 64 N. W. (2d) 741, 66 N. W. (2d) 623, which approves the principle enunciated in *Crow v. Board of Adjustment of Iowa City* (1939), 227 Iowa 324, 288 N. W. 145. The *Crow Case* holds (267 Wis. p. 315f):

". . . that when the applicant has made full disclosure and a building permit is then granted by the proper city official upon a reasonable interpretation by him of the applicable ordinance, the permit is valid in its inception and by

proceeding in reliance on it the property owner secures a vested right which the board [of appeals] could not extinguish by a subsequent different, though in itself reasonable, interpretation of the terms of the ordinance."

In issuing the building permit to Modern, the city building inspector construed the provision of the zoning ordinance which prohibited automobile laundries or washing stations in a local business district "as a principal business" as only prohibiting such a use where the proposed automobile laundry or washing station would be the predominant use. This clearly was not a reasonable interpretation but a legally erroneous one. This is because it is a rule of statutory construction that the article "a" is generally not used in a statute in a singular sense unless such an intention is clear from the language of the statute. *Lindley v. Murphy* (1944), 387 Ill. 506, 56 N. E. (2d) 832; *Application of Hotel St. George Corp.* (1960), 207 N. Y. Supp. (2d) 529; *Dobbs v. Board of County Commissioners of Oklahoma County* (1953), 208 Okla. 514, 257 Pac. (2d) 802; 82 C. J. S., Statutes, p. 676, sec. 337. The instant ordinance contains nothing which would indicate an intent that the article "a" preceding "principal use" was used in the singular sense. Therefore, this ordinance must be construed as prohibiting an automobile laundry or washing stand if the same would constitute one of the several principal uses to which the property would be put.

Construing the evidence most favorable to Modern, it is clear that the additional building authorized by the permit, and the installation therein of conveyor car-wash equipment, would make car washing one of the principal uses to which the service station would be put. Berggren, president of Modern, testified that the cost of the new addition would be $64,000; and that of the car-washing equipment, $32,000. He stated that in square footage 45 to 55 percent of the new addition would be devoted to car washing and another 23

to 27 percent to car waxing. Berggren further testified that 120 cars could be washed per hour, and that 87,000 cars had been washed in a twelve-month period at a conveyor type of car wash being operated by Berggren at another location. An expert witness called by Modern estimated that 60 cents of every $3.70 income by a service car-wash station would be for car washing. However, purchasers of gasoline at the station would be allowed a credit on the usual charge for car washing which credit is not reflected in these comparative income figures. The car-washing end of the business serves as a feeder for the sale of gasoline. Cities Service, in anticipation of the increased volume of gasoline sales resulting from the installation of the conveyor car wash, increased the existing gasoline-storage capacity of the station from 12,000 gallons to 32,000 gallons.

The rule of *Crow v. Board of Adjustment of Iowa City, supra,* is inapplicable here because the building inspector issued the permit in violation of the zoning ordinance because of his unreasonable and erroneous interpretation of its meaning. Sec. 13–5 of the Milwaukee zoning ordinance provides: "The issuance of a [building] permit . . . shall not be deemed or construed to be a permit for, or an approval of, any violation of any of the regulations of this code." A similar provision of the Milwaukee county zoning ordinance was before this court in *Wauwatosa v. Strudell* (1959), 6 Wis. (2d) 450, 455, 95 N. W. (2d) 257. It was there claimed that an expenditure of $60,000 had been made in reliance on the permit. We held that the issuance of a permit did not authorize a use which violated the zoning ordinance. This holding controls the issue raised by appellants that the expenditure of funds by them precluded the Board of Appeals from revoking the building permit.

There is a further reason why appellants' contention in this respect must fail. There is no showing made that any of the expenditures claimed to have been made by them were

incurred between the issuance of the permit on February 2, 1961, and the date Modern received notice of the Post and Refkin appeal of February 6, 1961. Once the appellants received notice of this appeal and the claim that the permit violated the zoning ordinance, they thereafter proceeded at their peril in incurring expenditures in reliance on the permit.

### Alleged Defects in Appeal to Board.

Par. 4 of sec. 62.23 (7) (e), Stats. 1959, provides that appeals to the Board of Appeals may be taken by any person aggrieved by any decision of "the administrative officer," which officer in this case was the building inspector; and that such an appeal "shall be taken within a reasonable time, as provided by the rules of the board, by filing with the officer from whom the appeal is taken and with the board of appeals a notice of appeal specifying the grounds thereof."

The circuit court found that the Board of Appeals had no rules in effect at the pertinent times in question because the board's rules were then in the process of revision. Appellants point out that the separate individual appeals by Post and Refkin were made on printed forms supplied by the Board of Appeals and that such forms bore this legend:

"Appeal must be taken within twenty days from the date of decision or order appealed from, and served upon the Inspector of Buildings and the Board of Zoning Appeals at least one week before date of hearing."

Assuming that this legend had the force of a board rule, the original joint notice of appeal was received by both the board and the building inspector well within the time limits of such rule, while the later separate individual appeals of Post and Refkin were not. If the joint appeal was validly taken, it is immaterial that the individual appeals may have been nullities because of lateness. The fact that Refkin later withdrew from the joint appeal and the board thereafter

entitled its decision of October 10, 1961, "In the Matter of the Appeal of Paul D. Post" is also immaterial. That was a correct title to employ after Refkin's withdrawal. Thus there was a timely appeal pending on which the Board of Appeals could act, absent any other jurisdictional defects.

Appellants contend that the grounds of appeal stated in the joint notice of appeal were insufficient to comply with the requirement of par. 4 of sec. 62.23 (7) (e), Stats. 1959, that a notice of appeal must specify "the grounds" of appeal. This notice of appeal stated the grounds of appeal in these words:

"The undersigned are aggrieved by the decision of the Building Inspector and the grounds of appeal are that the issuance of said permit constitutes a violation of 16–5 12 Milwaukee Code of Ordinances."

Par. 12 of sec. 16–5, Milwaukee Code of Ordinances, covered the single prohibition against automobile laundries or washing stations in a local business district as a principal business. Therefore, we have no hesitancy in holding that this notice of appeal adequately stated the grounds of appeal, and that there was full compliance with the statute in this respect.

We next turn to the more-troublesome question of the payment of the filing fee. Sec. 16–35.5 of the Milwaukee Code of Ordinances provides in part, "A filing fee of $10 for each appeal shall be paid to the city treasurer." No such filing fee was paid by Post and Refkin upon taking their joint appeal, but on March 13, 1961, their counsel mailed to the Board of Appeals a letter inclosing a $10 check to cover this filing fee. This check remained in the board's files until June 1, 1961, when counsel for Post and Refkin discovered it was still there, took the check to the city treasurer, and paid it to that officer. The circuit court found that the filing fee had been paid to the board on March 14, 1961. We interpret the ordinance requirement with respect to payment of

the filing fee as requiring its payment within the twenty-day period provided for taking an appeal.

At the first hearing on March 2, 1961, counsel for Modern entered a special appearance and stated various reasons why he contended the board was without jurisdiction to hear the appeal. One of the stated reasons was the failure to have paid the $10 filing fee. However, thereafter, at the hearing of April 6, 1961, counsel for Modern entered a general appearance. While it would have been proper for the board to have dismissed the appeal because of failure to timely pay the filing fee it did not do so. We hold that the failure to timely pay the filing fee was not such a defect as to have deprived the board of jurisdiction, and that Modern waived this defect when, after having raised the issue on March 2, 1961, it thereafter on April 6, 1961, entered a general appearance. Cf. *McKesson-Fuller-Morrison Co. v. Industrial Comm.* (1933), 212 Wis. 507, 510, 250 N. W. 396.

We also determine that this waiver by Modern is binding upon Cities Service. Cities Service authorized Modern to apply for the building permit in its name. With respect to all proceedings relating to this permit a relationship of either agency or joint venture existed so that the act of Modern in entering its general appearance before the board on April 6, 1961, also constituted a waiver of the filing-fee defect by Cities Service. It is significant that, while Cities Service did not enter any appearance in the appeal proceeding before the board, the record discloses that it had representatives present as observers at some of the hearings, including a representative of its legal staff from New York. Thus Cities Service was apparently content to stand by and let Modern carry the ball throughout the board hearings.

*Alleged Defect in Published Notices of Board Hearings.*

Par. 6 of sec. 62.23 (7) (e), Stats. 1959, provides in part:

"The board of appeals shall fix a reasonable time for the hearing of the appeal or other matter referred to it, and give public notice thereof, as well as due notice to the parties in interest, . . ."

No public notice of the original hearing of March 2, 1961, was apparently published by the Board of Appeals. Timely notices of the subsequent hearings were published in the Daily Reporter, a daily newspaper published in the city of Milwaukee. These notices stated the time and place where the Board of Appeals would conduct public hearings "affecting the following premises" which was followed by a list of the affected premises. These notices described the instant service station premises as:

> "Modern Car Wash
> "Owner: Floyd Berggren, 2455 W.
> "Wisconsin Ave."

Appellants contend that such notices were inadequate notice to the public because they failed to apprise any reader thereof of the nature of the matter to be heard concerning the affected premises. They further maintain that as a result of such claimed defective notice the Board of Appeals was without jurisdiction to act. A number of New York decisions are cited as supporting authority. Significantly these cases deal with public notices of hearings on the issue of granting variances and not with the issue of whether a building permit should be revoked.

We consider the situation with respect to a claimed defect in the published notice of a hearing to consider a variance to be entirely different than that of a hearing to consider an appeal by a nearby property owner to revoke a building permit which he contends violated a zoning ordinance. In the former situation adequate public notice is most essential in order to give affected property owners a chance to protest

against the proposed variance. If the variance is granted and the published notice is defective, nearby property owners adversely affected, who have been seriously prejudiced thereby, ought to be entitled to assert that the board's action in granting the variance is illegal and void. Here, the only purpose served by publishing notice of the hearings would be to alert other property owners in the area who would be harmed if the permit were not revoked. However, Post, by his appeal, did such an effective job that the board did revoke the permit. It would seem highly incongruous if Modern and Cities Service were permitted to successfully attack the board's action in revoking the permit on the ground that other nearby property owners were not given adequate published notice of the hearings so that they might join in the attack upon the permit. Such defect would not be prejudicial to Modern. Therefore it is our considered judgment that any defect in the publishing of notices of hearing did not deprive the Board of Appeals of jurisdiction to revoke the permit. The interests of nearby property owners were adequately protected by Post's prosecution of the appeal. Modern, by its general appearance and active participation in the appeal proceedings, is not entitled to raise this lack of adequate notice to others than itself. For reasons previously stated, Cities Service possesses no greater right to raise any error than does Modern.

*Minutes of Board Meetings.*

Par. 3 of sec. 62.23 (7) (e), Stats. 1959, provides in part as follows:

"The board shall keep minutes of its proceedings, showing the vote of each member upon each question, or, if absent or failing to vote, indicating such fact, and shall keep records of its examinations and other official actions, all of which shall be immediately filed in the office of the board and shall be a public record."

Miss Marsh, secretary of the Board of Appeals, kept minutes of all board meetings pertaining to the instant controversy. The minutes disclosed who was present, when testimony was given, and who testified. Minutes were not taken of the testimony itself. Testimony of all witnesses given at the hearings, however, was taken down verbatim in shorthand by a court-reporting firm. These shorthand notes were later transcribed after the writs of certiorari were issued, and the transcript of this testimony was included in the return made by the Board of Appeals to the writs. On October 5, 1961, counsel for Modern requested permission of Miss Marsh to see the board minutes for the purpose of ascertaining the board's decision and made a similar request for the same purpose on October 10, 1961. Miss Marsh refused these requests on the ground that her instructions were that until the decision was typed up and signed, no information could be given regarding the case, nor was she permitted to show the board minutes. A copy of the board's decision was mailed to counsel for Modern on October 10, 1961.

The only breaches of the quoted provisions of par. 3 of sec. 62.23 (7) (e), Stats. 1959, reflected by the record were that there may have been unreasonable delay in transcribing and filing with the board some of the shorthand notes of testimony taken at the hearing, and the refusal on board orders to permit Modern's counsel to see the minutes of the October 5, 1961, board meeting. Appellants, however, have pointed to no prejudice sustained by reason of such breaches. In the absence of such a showing of prejudice, we do not find such error as would require reversal of the board's decision. However, we do not condone this practice since it violates statutory provisions which require that such minutes be kept and be open to public inspection.

*Holding of Executive Sessions by Board.*

Par. 3 of sec. 62.23 (7) (e), Stats. 1959, also provides:
". . . All meetings of the board shall be open to the public."

Another statute bearing on the question of the right of a municipal board, while acting in a quasi-judicial capacity, to hold executive sessions from which the public is excluded, is sec. 14.90, Stats. 1959. We quote the pertinent provisions thereof as follows:

"(2) To implement and insure the public policy herein expressed, all meetings of all state and local governing and administrative bodies, boards, commissions, committees and agencies, including municipal and quasi-municipal corporations, unless otherwise expressly provided by law, shall be publicly held and open to all citizens at all times, except as hereinafter provided. No formal action of any kind shall be introduced, deliberated upon or adopted at any closed executive session or closed meeting of any such body.

"(3) Nothing herein contained shall prevent executive or closed sessions for purposes of:

"(a) Deliberating after judicial or quasi-judicial trial or hearing."

When the two statutes are construed together we think it clear that where a municipal board, such as the instant Board of Appeals, is acting in a quasi-judicial capacity, all meetings in the nature of hearings held on a pending appeal must be open to the public, but that closed executive sessions may then be held for the purpose of deliberating to determine what decision should be made. The instant Board of Appeals, upon conclusion of the open hearings held on the pending appeal, held several executive sessions for the purpose of deliberation. The dates of these sessions were August 29, September 7, September 19, and October

5, 1961. At the October 5th session the board, by the affirmative vote of all five members, voted to revoke the building permit which had been issued to Modern on February 2, 1961. A further executive session was held on October 10, 1961, but the only business apparently transacted was the chairman's signing the typed decision which revoked the permit.

The question arises as to whether the taking of the vote, whereby the board determined the appeal, could properly take place at an executive session or whether it was required to be taken at a meeting open to the public. *Sullivan v. Northwest Garage, Inc.* (1960), 223 Md. 544, 165 Atl. (2d) 881, held that under a Maryland statute, which required the meetings of a municipal zoning board of appeals to be public, such board after the public hearings might deliberate and vote on the pending matter in private. In its opinion the Maryland court stated (233 Md. at p. 550):

"The weight of such authority as there is supports our conclusion that the hearings of the Board must be public but that the deliberations of the Board after the hearing is completed may be in private. 58 Am. Jur. Zoning Sec. 222; *Keiser v. Inhabitants of City of Plainfield* (Sup. Ct. N. J.), 159 A. 785, 786; *St. John's Roman Catholic Church v. Board of Adjustments* (Conn.) 8 A. 2d 1, 4; *School District No. 9 v. District Boundary Board* (Wyo.), 351 P. 2d 106, 110."

A case contra to *Sullivan v. Northwest Garage, Inc.,* is *Blum v. Board of Zoning & Appeals* (1956), 1 Misc. (2d) 668, 149 N. Y. Supp. (2d) 5. We deem the majority rule followed in the *Sullivan Case* to be the preferable rule. We cannot believe the legislature intended that the board, after concluding its deliberations in executive sessions, was then required to schedule a public meeting and publish notice thereof in order to record the vote embodying the result reached in a prior executive session. It seems to us that

voting is an integral part of deliberating and merely formalizes the result reached in the deliberating process.

However, we do find that certain occurrences which took place at some of the board's executive sessions did violate par. 3 of sec. 62.23 (7) (e) and sec. 14.90, Stats. 1959. In addition to the members of the board and their counsel (an assistant city attorney), the building inspector, or a representative of his office, and a representative of the city planning commission attended some of these executive sessions. The views of these representatives were communicated to the board at the closed sessions of the board. Not only did this exceed the scope of permissible deliberation at an executive session, but it constituted improper board conduct even if there had been no statute prohibiting it. Clearly, it is improper for an administrative agency, when acting in a quasi-judicial capacity, to base a decision or finding upon evidence or information obtained without the presence of and notice to the interested parties, and not made known to them prior to the decision. See Annotation in 18 A. L. R. (2d) 552, and 1 Davis, Administrative Law Treatise, pp. 412–415, sec. 7.02, to such effect. This principle was recognized by this court in *International Harvester Co. v. Industrial Comm.* (1914), 157 Wis. 167, 147 N. W. 53. However, it was not improper for the board to permit its attorney to be present at the executive sessions or in then soliciting his legal advice with respect to issues raised by the pending appeal.

If we believed that there was any probability that information improperly received at executive board sessions might have influenced the board's decision, we would reverse and direct the circuit court to set aside the board's decision and remand for further proceedings in the nature of a new trial. However, our review of the record convinces us that it would not support a decision in favor of sustaining the building permit, if such a decision would have been made.

The evidence conclusively establishes that washing cars would be one of the principal business uses to which the affected premises would be put upon installation of the proposed conveyor car wash. We, therefore, find that the error committed did not influence the board's decision.

### Absence of Board Members from Meetings.

Par. 9 of sec. 62.23 (7) (e), Stats. 1959, requires the concurring vote of four of the five board members in order to reverse an order of the building inspector. Here all five members voted to revoke the permit. Appellants contend, however, that three board members were absent from certain board meetings, and that this disqualified them from voting. These absences were as follows: Caravella was absent from the entire July 6, 1961, hearing; Chairman Christ was absent from a part of the June 1, 1961, hearing, but was present at a considerable portion thereof; and Mrs. Podkomorski was absent from the October 10, 1961, executive session.

Since the concluding final vote was taken at the October 5, 1961, executive session, we deem the October 10, 1961, executive session is without legal significance. Therefore, Mrs. Podkomorski's absence from this latter meeting could not reach back and retroactively disqualify her vote at the October 5th executive session.

We find it unnecessary to decide whether Caravella's absence from the entire July 6, 1961, hearing disqualified him from voting, because there would be four valid votes in favor of revocation if both Mrs. Podkomorski and Chairman Christ were not disqualified.

Thus the crucial absence is that of Chairman Christ from part of the June 1, 1961, hearing, such absence having occurred during the middle portion of that hearing. In resolving this issue we consider the absence of a member of an administrative agency (while acting in a quasi-judicial capac-

ity), from a portion of a hearing stands in a different category than the absence of a juror from the courtroom during a portion of the trial. In the latter case of course the verdict would be void. Courts should be careful not to lay down such stringent rules with respect to administrative agencies as to hamstring their efficient operation. This court in *Wright v. Industrial Comm.* (1960), 10 Wis. (2d) 653, 103 N. W. (2d) 531, held there was no denial of due process where two different examiners in a workmen's compensation case separately conducted hearings and then both joined in the findings and order. Inherent in this determination was the assumption that each examiner was in some manner adequately informed of the nature of the material testimony given at the hearing conducted by the other examiner.

In the instant case it is not improbable that Christ was advised by one of his fellow board members, or by the reporter, of the nature of the testimony given during his absence during part of the hearing. Appellants made no attempt to question Christ as to whether this did or did not occur. If he had been adequately so informed of what had transpired during his absence, we would not hold him to have been disqualified to vote at the October 5th meeting. While our decision on this issue is contra to *Koslow v. Board of Zoning Appeals* (1955), 19 Conn. Supp. 303, 112 Atl. (2d) 513, we are not persuaded by that authority. Further, we deem this to be a proper case to invoke the presumption of regularity, and assume, in the absence of any showing to the contrary, that Christ had been adequately informed. Cf. *Marshall Drainage Dist. v. Festge* (1956), 272 Wis. 114, 118, 74 N. W. (2d) 616, and *State ex rel. Nelson v. Rock County* (1955), 271 Wis. 312, 316, 73 N. W. (2d) 564.

Appellants contend that the board itself was disqualified from proceeding with a hearing unless all five members

were at all times present, and cite *Sesnovich v. Board of Appeal* (1943), 313 Mass. 393, 47 N. E. (2d) 943. There a decision of a zoning board of appeals was held void because of the absence of a member from the hearing even though the absent member before voting on the final decision had read a transcript of the testimony and viewed the premises. The Massachusetts court construed the applicable statute as requiring the presence of the "entire membership of the board" at the hearing. We read no such requirement into the provisions of sec. 62.23 (7) (e), Stats. 1959.

Therefore, it is our conclusion that the absence of Christ from part of the June 1, 1961, hearing was not in itself a jurisdictional defect which disqualified him from voting to revoke the permit or which rendered the board's decision void.

### *Issue of Mootness.*

On April 28, 1961, the applicable zoning ordinance was amended so as to prohibit automobile washing or cleaning stations which employed a conveyor system.[2] Because of this amendment, appellants argue that the appeal before the board was rendered moot. They assert that the grounds of objection, viz., that automobile washing would constitute a principal business use, was legislated out of the ordinance by this amendment. We consider this contention to be without merit. The chief reason why automobile washing would have become a principal business use was because under the permit a conveyor-system car wash was to be installed. The April 28, 1961, amendment prohibits a conveyor-system car wash in a local business district. Therefore, appellants will never be able to install a conveyor-system car wash on the premises so long as the amended ordinance stands in its present form unless the validity of the February 2, 1961, permit is ultimately upheld.

---

[2] See footnote 1, *supra.*

As stated in *State v. Zisch* (1943), 243 Wis. 175, 177, 9 N. W. (2d) 625, "A case is moot when a determination is sought 'upon some matter which, when rendered, for any reason, cannot have any practical legal effect upon a then existing controversy.'" Clearly such was not the case here.

### Constitutionality Issue.

Appellants' final contention is that if the board's revocation of the building permit is allowed to stand it will work such a discriminatory enforcement of the applicable zoning law prohibition as to constitute a denial of the equal-protection-of-the-laws clause of the Fourteenth amendment to the United States constitution.

The record is very meager on this issue of discriminatory enforcement. The building inspector testified that six or eight building permits had been issued for combination service and automobile-washing stations in local business districts. These were not enumerated, but he identified five of these in answer to questions put by Modern's counsel. In one case he said the conditions were similar to those of the instant Cities Service's premises, possibly implying thereby that the car-washing equipment was of the conveyor type. There was no express showing made that these other permits related to conveyor-system car washes as distinguished from a stationary washing rack. There also is completely lacking any evidence as to whether these permits were issued before or after Post and Refkin filed their joint appeal. This is material because until then the building inspector had erroneously interpreted the ordinance as permitting car washing as long as it was not *the* predominant business use of the premises.

However, of even more significance is the complete absence of any evidence that any property owners in the vicinity of any of these other combination service and washing stations ever protested against the issuance of these other

building permits or filed any appeal with the Board of Appeals. Post should not be denied his right to have the ordinance enforced in this instance because property owners elsewhere may have been indifferent to having the ordinance enforced.

Even if there had been evidence that the city itself had enforced the ordinance in one instance and not in others, this would not in itself establish a violation of the equal-protection-of-the-laws clause of the Fourteenth amendment. This was pointed out by Mr. Chief Justice STONE in *Snowden v. Hughes* (1944), 321 U. S. 1, 8, 9, 64 Sup. Ct. 397, 88 L. Ed. 497, wherein he declared:

"The unlawful administration by state officers of a state statute fair on its face, resulting in its unequal application to those who are entitled to be treated alike, is not a denial of equal protection unless there is shown to be present in it an element of intentional or purposeful discrimination. . . . But a discriminatory purpose is not presumed, . . ." See also *Nick v. State Highway Comm.,* ante, p. 489, 496, 124 N. W. (2d) 574.

Upon the evidence before us we find no violation of the Fourteenth amendment.

*By the Court.*—Judgment affirmed.