THE HONORABLE, THE SENATE Legislature
Senate Resolution 40 (1973) requests my opinion on the authority of community relations — social development commissions authorized under sec. 66.433, Stats.
The resolution specifically inquires:
 1. Does the commission have the authority to operate programs and provide direct services to individual citizens?
The answer to this question is "yes."
The resolution further requests that the opinion clearly delineate the functions of such a commission.
It is impossible to clearly delineate the functions of such a commission in view of the broad statute under which it was created. Such a commission has all of the powers and functions expressly given by statute and those which are necessarily implied. A reading of the whole statute makes it clear that the powers of such commission are not limited to:
 ". . . study, analyze and recommend solutions for major social, economic and cultural problems which affect people residing or working within the municipality . . ."
Section 66.433 (3), Stats., provides:
 "(3) PURPOSE AND FUNCTIONS OF COMMISSION. (a) The purpose of the commission is to study, analyze and recommend solutions for the major social, economic and cultural problems which affect people residing or working within the municipality including, without restriction because of enumeration, problems of the family, youth, education, the aging, juvenile delinquency, health and zoning standards, and discrimination in housing, employment and public accommodations and facilities on the basis of class, race, religion or ethnic or minority status.
"(b) The commission may: *Page 184 
 "1. Include within its studies problems related to pornography, industrial strife and the inciting or fomenting of class, race or religious hatred and prejudice.
 "2. Encourage and foster participation in the fine arts.
"(c) The commission shall:
 "1. Recommend to the municipal governing body and chief executive or administrative officer the enactment of such ordinances or other action as they deem necessary:
 "a. To establish and keep in force proper health standards for the community and beneficial zoning for the community area in order to facilitate the elimination of blighted areas and to prevent the start and spread of such areas;
 "b. To insure to all municipal residents, regardless of race or color, the rights to possess equal housing accommodations and to enjoy equal employment opportunities.
 "2. Co-operate with state and federal agencies and nongovernmental organizations having similar or related functions.
 "3. Examine the need for publicly and privately sponsored studies and programs in any field of human relationship which will aid in accomplishing the foregoing objectives, and initiate such public programs
and studies and participate in and promote such privately sponsored programs and studies.
 "4. Have authority to conduct public hearings within the municipality and to administer oaths to persons testifying before it.
 "5. Employ such staff as is necessary to implement the duties assigned to it." (Emphasis added.)
Under sec. 66.433 (3) (c) 2, 3, Stats., there is some authority to operate programs and provide direct services to individual citizens.
Further, sec. 66.433 (7), Stats., provides:
 "(7) DESIGNATION OF COMMISSIONS AS COOPERATING AGENCIES UNDER FEDERAL LAW. (a) The commission may be the official agency of the municipality *Page 185 
to accept assistance under title II of the federal economic opportunity act of 1964. No assistance shall be accepted with respect to any matter to which objection is made by the legislative body creating such commission, but if the commission is established on an intergovernmental basis and such objection is made by any participating legislative body said assistance may be accepted with the approval of a majority of the legislative bodies participating in such commission.
 "(b) The commission may be the official agency of the municipality to accept assistance from the community relations service of the U.S. department of justice under title X of the federal civil rights act of 1964 to provide assistance to communities in resolving disputes, disagreements or difficulties relating to discriminatory practices based on race, color or national origin which may impair the rights of persons in the municipality under the constitution or laws of the United States or which affect or may affect interstate commerce."
Public Law 88-452, August 20, 1964, is known as the "Economic Opportunity Act of 1964." Title II of such act is concerned with "Urban and Rural Community Action Programs." The purpose of Part A of Title II is to provide stimulation and incentive for urban and rural communities to mobilize their resources to combat poverty through community action programs. While the program does provide for study, planning, and mobilization of resources of a community to attack poverty, sec. 202 (a) (2) contemplates that a community action program should provide services, assistance, and other activities to help eliminate poverty through "developing employment opportunities, improving human performance, motivation, and productivity, or bettering the conditions under which people live, learn, and work." Part B of Title II is concerned with "Adult Basic Education Programs." Its purpose in part is to "initiate programs of instruction for persons who have attained age eighteen and whose inability to read and write the English language constitutes a substantial impairment of their ability to get and retain employment commensurate with their real ability . . ." It is clear that local educational agencies, which include boards of education, are to be utilized to carry out programs of instruction for individuals. Part C of Title II is concerned with a "Voluntary Assistance Program For Needy Children." A section of the Office of Economic Opportunity *Page 186 
was to establish an information and coordination center to encourage voluntary assistance for deserving and needy children by persons who voluntarily desire to financially assist such children.
Public Law 88-352, July 2, 1964, is known as the "Civil Rights Act of 1964." Title X thereof provides for the "Establishment of Community Relations Service." The Federal Service had the duty "to provide assistance to communities and persons therein in resolving disputes, disagreements, or difficulties relating to discriminatory practices based on race, color, or national origin which impair the rights of persons in such communities under the Constitution or laws of the United States or which affect or may affect interstate commerce . . . ." It is clear that the federal officers and employes may work directly with individual citizens in resolving disputes, etc., and the agency is authorized to "utilize the cooperation of appropriate state or local, public or private agencies." A local community action commission could cooperate and would necessarily have to work with individual citizens in most cases.
The present Economic Opportunity Act is greatly expanded over the Act of 1964, and Urban and Rural Community Action Programs appear in Title 42, U.S.C.A. secs. 2781-2837. Many programs contemplate that the community action commission cooperate in providing direct assistance to individual citizens. Among the various programs are: Project Headstart, Comprehensive Health Services, Emergency Food and Medical Services, Family Planning, Senior Opportunities and Services, Alcoholic Counseling and Recovery, Drug Rehabilitation, Environmental Action, Rural Housing Development and Rehabilitation, Training, Research and Technical Assistance with respect to the aforesaid, Neighborhood Centers, Youth Recreation and Sports Programs, and Consumer Action Programs.
It is true that sec. 66.433 (7) (a), Stats., only made reference to the "federal economic opportunity act of 1964" and did not use the words "as amended" which are used in sec. 22.13 (2) (m), Stats., which grants the Wisconsin Department of Local Affairs and Development, power to assist in the development and administration of human resource programs. A court might hold, however, that local community relations — social development commissions have power to carry out at least some of the expanded functions authorized by the *Page 187 
present federal economic opportunity act. The precise limits cannot be determined in a legal opinion. The facts and circumstances in any specific situation would in part determine the outcome of any court test.
In State ex rel. Cities Service Oil Co., v. Bd of Appeals
(1963), 21 Wis.2d 516, 527, 124 N.W.2d 809, the court held that where a city of the first class by ordinance,
 ". . . adopts a particular section of ch. 62, Stats., . . . such adoption embraces any subsequent amendment
which the legislature may thereafter make in the adopted statute which is not wholly incompatible with such statute as it stood at the time the adopting ordinance was enacted . . . ." (Emphasis added.)
RWW:RJV