DOLPHIN, Appellant, v. BOARD OF REVIEW OF THE VILLAGE OF BUTLER, Respondent.

*No. 142 (1974). Submitted under sec. (Rule) 251.54 October 2, 1975.—Decided October 28, 1975.*
(Also reported in 234 N. W. 2d 277.)

For the appellant the cause was submitted on the briefs of *Walter R. Menzies* of Menomonee Falls.

For the respondent the cause was submitted on the brief of *John P. Buckley* of Waukesha.

WILKIE, C. J. The appellant, Harold Dolphin, challenged his real estate tax assessment before the Board of Review of the Village of Butler in Waukesha county. The sole issue on appeal here is whether the board acted on competent evidence within its jurisdiction when it affirmed[1] the assessment placed on the appellant's residential property when such evidence consisted solely of statements made by the village assessor at an executive session of the board without the presence of the appellant. We conclude it was jurisdictional error for the board to act on this incompetent evidence. We reverse the judgment and direct the circuit court to set aside the

---

[1] The Board of Review actually reduced the assessment placed on the appellant's property by some $5,400. However, the appellant still feeling the assessment was too high sought review by certiorari in the circuit court.

board's decision and remand for further proceedings in the nature of a new trial or hearing before the board.

In 1972, the appellant's home was assessed at $32,235, representing the full value. In 1973, the village board adopted a resolution calling for the reassessment of the entire village and thereafter engaged the services of Henry Trilling of the Great Lakes Appraisal Corporation to make the reassessment for the 1973 assessment roll. This was done and the appellant's real estate was assessed in 1973 at $50,400, representing the full value.

After the appellant received notice of the increase in his assessment, he filed an objection with the Board of Review which held a hearing on the objection on July 9, 1973.

The appellant appeared at the hearing and objected to the "too high" assessment placed on his real estate. He testified that in his opinion the total value for the land and improvements should be $34,800. The appellant testified without objection that he had received at least three appraisals on the property: (1) From a realtor who stated that the house would sell for a maximum of $36,000; (2) from the First National Bank of Waukesha on the property setting the appraised value at the same amount—$36,000; and (3) a letter from an appraiser he engaged to appraise the property. In this letter, the appraiser spelled out his method of appraising, which included a comparison to sale prices of single family homes offering "similar utilities within the general area." The letter contained the appraiser's opinion that the total property could command "$36,000 as a single family residence." This letter listed the comparable sales the appraiser considered in arriving at his appraisal of $36,-000.

After the appellant presented this testimony, the Board of Review told him they would notify him by mail of the action taken on his objection. With that, the ap-

pellant apparently left the meeting. Although the transcript on this appeal does not make it entirely clear, it appears that after the appellant left the room, the board considered the matter in what the transcript denominates "Executive Session." Remaining with the board in this executive session was Henry Trilling. Apparently, Trilling was the only one that said anything since his remarks were the only ones transcribed.

In this executive session, Trilling attacked the appraisal submitted by the appellant. He observed: (1) That the appraiser was not there for them to cross-examine; (2) some of the comparison sales listed by the appraiser were not within the village of Butler; (3) the sales the appellant's appraiser used for comparison purposes did not include the sales of properties immediately adjacent to the appellant's land. Trilling also objected to the appellant's appraiser's 50 percent depreciation of the building, since according to Trilling, the appellant's residence was all stone and only twenty-five years old.

More specifically, Trilling made the following statements:

". . . You have him presenting so-called appraisal data of this property from a realtor who doesn't back up his data with any specific sales, and we have analyzed every sale that has taken place in this village and we have analyzed every sale of all types of properties, and we have followed the Wisconsin Assessors' Manual System for evaluating property to equalize it, and we have adjusted them for sales, so we are sound on that particular point.

"Now you have the opinion of a bank involved here, which loans money probably more on name rather than on the actual value of the property, because they, again do not give any back-up data and of course, the man has been doing business with them for years, so I guess he's got whatever type of appraisal he wanted from them. He has an appraiser that was not here, but we have

the written data that was presented before you; that's Item #2 and on that, the fact that this appraiser is not here to back up his data, and his data does not include sales of adjacent properties which would indicate and does indicate considerably higher values than the so-called appraisal indicates. So the appraiser cannot be here to tell us why he didn't use these sales, if he even knew about them.

"The appraiser that made his appraisal depreciates the building considerably, and I would like to know how an old building like this can be depreciated that greatly . . . Now, too, we would have to note that the man has made comparisons with property that did not sell within this village and God knows where they are, and one sale that he did compare that occurred here within the village, we have pulled out the data and have shown you that, of course, they are nowhere near similar properties and nowhere near situated on similar land and nowhere near the same location within the city, or on that main street with considerably higher land values. In short, he should have to be able to justify the statements that are brought forth in his so-called appraisal of this property, which is, in fact, comparisons made of properties that no one knows anything about and are nowhere around here, and he has ignored sales in a general area. I would object to the board changing its valuation because there is no testimony that would be for it by the objectors to the market value of this property. . . ."

After hearing these statements, the board voted unanimously to reduce the appellant's assessment from $50,-400 to $45,000.

Nevertheless, the appellant, still feeling aggrieved, petitioned the circuit court for Waukesha county for certiorari to review the actions of the Board of Review and to set aside the tax assessment on the grounds that the evidence did not support even the reduced assessment of $45,000. The circuit court affirmed the reduced assessment, stating that it was satisfied that the assessor took into account the sales of similar and adjacent property within the village, and that the appraisals and arguments offered by the appellant did not support his con-

tention that the assessment should be reduced still further. The court concluded that there was no evidence in the record that the original assessment was incorrect, arbitrary or dishonest, and that the appellant had not established any basis for setting aside the assessment.

The rules for reviewing a board of review's action by certiorari in tax assessment cases has been often stated by this court. Most recently, in *State ex rel. Geipel v. Milwaukee*,[2] this court stated:

"The scope of review by certiorari is strictly limited in Wisconsin. . . . the reviewing court may consider only . . .

". . . (1) Whether the board kept within its jurisdiction; (2) whether it acted according to law; (3) whether its action was arbitrary, oppressive or unreasonable and represented its will and not its judgment; and (4) whether the evidence was such that it might reasonably make the order a determination in question. . . .

"In the context of property assessment for purposes of taxation the court may determine whether the assessment was made on the statutory basis, for such inquiry involves a question of law. . . . If the proper basis was used, however, and the valuation was not made arbitrarily or in bad faith, the reviewing court must sustain the valuation if there is any evidence to support it. . . ." (Citations omitted.)[3]

In this appeal, appellant's contention is not so much that the assessment was made without following the prescribed statutory basis, but rather that the assessment was excessive and that there was no competent evidence to support it. The appellant objects to the evidence presented by the appraiser Trilling at the executive session of the Board of Review, claiming that this procedure violated sec. 70.47 (7) (b), Stats., which requires a forty-eight-hour notice to the objector of the meeting at which the board considers the objection.

[2] (1975), 68 Wis. 2d 726, 229 N. W. 2d 585.
[3] *Id.* at pages 731, 732.

The board contends that the appellant cannot now raise this argument because it was not presented to the lower court.

On this threshold question, we conclude we may properly consider the arguments raised by the appellant even though such arguments are raised for the first time on this appeal. In *State ex rel. General Motors Corp. v. Oak Creek,*[4] this court dealt with a similar issue concerning whether the fact that the taxpayer failed to raise a question of the validity of a taxing statute before the board of review and in its initial brief in circuit court on certiorari, constituted a waiver of the taxpayer's right to have that issue decided. This court rejected the waiver argument and concluded that the issue, being one of law, should have been decided by the circuit court. Furthermore, we stated:

"However, even if this inquiry into the jurisdiction of the board is deemed to have been waived in the trial court and raised for the first time on appeal, it would appear that the court should still consider it because of its fundamental nature and importance. The usual reasons for not considering such questions are not present here in that there is no problem of an incomplete record, and the opposing party has had the opportunity to brief the question and present its arguments. This court has said that whether it should review an issue raised here for the first time depends upon the facts and circumstances disclosed by the particular record. The question is one of administration, not of power. *See Cappon v. O'Day* (1917), 165 Wis. 486, 162 N. W. 655; *State ex rel. Postel v. Marcus* (1915), 160 Wis. 354, 152 N. W. 419. Since the issue raised concerns the jurisdiction of the board of review, a subject properly reviewable on certiorari, it should be considered."[5]

On certiorari, courts review the proceedings of the board of review to ascertain whether it kept within its

[4] (1971), 49 Wis. 2d 299, 182 N. W. 2d 481.
[5] *Id.* at pages 319, 320.

jurisdiction and whether it acted upon competent evidence to give it jurisdiction.[6] Since in the instant case, the only evidence in the record concerning the assessment of the appellant's property came from Trilling at the "executive session" the narrow question is whether this was competent evidence upon which the board could act.

In the case of *State ex rel. Baker Mfg. Co. v. Evansville,*[7] the taxpayer appealed to this court from a judgment quashing his writ of certiorari which had been sought to review the proceedings of the board of review of the city of Evansville. The board had sustained an assessment of the taxpayer's personal property after two meetings. The first of the meetings occurred on September 21, 1949, and was referred to as "an informal meeting." From the reported case, it appears that no action was taken at this meeting, although the president of the taxpayer had been invited to participate in it. This meeting was abruptly adjourned.

Thereafter, on October 17, 1949, the city clerk issued a notice that there would be a meeting of the board at 7:30 p.m. on October 18th. The taxpayer received ten hours' notice of this meeting, but did not attend. At this second meeting, the assessor and other witnesses were examined with respect to the assessment. The board of review and later the trial court on certiorari relied on the assessor's testimony at this meeting to sustain the assessment placed on the taxpayer's personal property. On appeal, this court reversed, citing the provisions of sec. 70.47 (4), Stats., which states that the board of review may adjourn from time to time until its business is completed, and if an adjournment is had for more than one day, a written notice must be posted

---

[6] *State ex rel. Boostrom v. Board of Review* (1969), 42 Wis. 2d 149, 166 N. W. 2d 184.

[7] (1952), 261 Wis. 599, 53 N. W. 2d 795.

on the outer door of the place of the meeting stating to what time the meeting is adjourned. This court noted that the record did not reveal that any such notice was posted and furthermore this court characterized the October 18th meeting as a new meeting requiring a statutory forty-eight-hour notice under the provisions of sec. 70.47 (7) (b), Stats., to the taxpayer or its attorney. Noting that although a ten-hour notice was given, the taxpayer did not attend the meeting, this court stated:

"We must hold that this meeting, held in the absence of the objecting taxpayer without giving him the statutory notice thereof, had no legal standing, and the testimony given at such a meeting without cross-examination by the objector will not serve to support the assessment. It was jurisdictional error to use it so and jurisdictional error to confirm the assessment at a meeting illegally held. No other action confirming the assessment was ever taken by the board of review, and the 1949 assessment of the company's personal property, accordingly, must be set aside."[8]

In the instant case, it cannot be determined from the record when the executive session was held by the board although it appears that this session occurred immediately following the hearing at which the appellant appeared. Thus, it is not clear that notice of the executive session was required. It is clear, however, that the appellant was not present at such session while the assessor was present and testified. We conclude this executive session was improper under the circumstances of this case and this amounts to jurisdictional error on the part of the Board of Review.

This conclusion is fortified by this court's decision in *State ex rel. Cities Service Oil Company v. Board of Appeals*,[9] where this court considered the procedure followed before the board of zoning appeals in the city

[8] *Id.* at page 605.
[9] (1963), 21 Wis. 2d 516, 124 N. W. 2d 809.

of Milwaukee. In that case, the objection was to the holding of executive sessions by the board. This court, citing the provisions of sec. 62.23 (7) (e), Stats. 1959, which governed the meetings of the board of appeals in zoning cases requiring that all such meetings be open to the public and also relying on the provisions of the then open meetings law, sec. 14.90, Stats. 1959, stated:

"When the two statutes are construed together we think it clear that where a municipal board, such as the instant Board of Appeals, is acting in a quasi-judicial capacity, all meetings in the nature of hearings held on a pending appeal must be open to the public, but that closed executive sessions may then be held for the purpose of deliberating to determine what decision should be made. . . ."[10]

We went on to hold that while such executive sessions were improper, no information had been improperly received at such session which had influenced the board's decision. If such information had been received, the case would have been reversed and the circuit court would have been directed to set aside the board's decision and remand for further proceedings in the nature of a new trial.

The court further stated:

"However, we do find that certain occurrences which took place at some of the board's executive sessions did violate par. 3 of sec. 62.23 (7) (e) and sec. 14.90, Stats. 1959. In addition to the members of the board and their counsel (an assistant city attorney), the building inspector, or a representative of his office, and a representative of the city planning commission attended some of these executive sessions. The views of these representatives were communicated to the board at the closed sessions of the board. Not only did this exceed the scope of permissible deliberation at an executive session, but it constituted improper board conduct even if there had been no statute prohibiting it. Clearly, *it is improper*

[10] *Id.* at page 537.

*for an administrative agency, when acting in a quasi-judicial capacity, to base a decision or finding upon evidence or information obtained without the presence of and notice to the interested parties, and not made known to them prior to the decision.* See Annotation in 18 A. L. R. (2d) 552, and 1 Davis, Administrative Law Treatise, pp. 412–415, sec. 7.02, to such effect. This principle was recognized by this court in *International Harvester Co. v. Industrial Comm.* (1914), 157 Wis. 167, 147 N. W. 53. . . ."[11] (Emphasis added.)

The open meeting law in Wisconsin has since been renumbered to sec. 66.77, Stats., but the same provisions as found in former sec. 14.90, have been retained. In the instant case, we conclude that the action of the Board of Review was contrary to the provisions of the open meeting law. Although it is permissible for the board to go into closed session for the purpose of deliberating *after* a quasi-judicial trial or hearing, it is clear the proceedings in the instant case were not in the nature of mere deliberations. They were more akin to a continuation of the quasi-judicial hearing but without the potentially bothersome presence of the objecting taxpayer. This was not proper.

Moreover, as recognized in the *Cities Service Case,* even without a statute prohibiting it, it is improper for an administrative agency to base its decision or finding upon evidence or information obtained without the presence of and notice to the interested parties. This is exactly what was done in this case when the Board of Review heard the statements made by Trilling in support of the assessment he placed on the appellant's property and attacking the appellant's own testimony.

*By the Court.*—The judgment appealed from is reversed and the cause remanded to the circuit court with directions to set aside the Board of Review's decision and remand the case for further proceedings in the nature of a hearing before the Board of Review.

[11] *Id.* at page 539.