BOARD OF ADJUSTMENT OF the CITY OF DES MOINES, Appellant,

Jerry's Homes, Inc., Intervenor-Appellant,

v.

Richard R. RUBLE et al., Appellees.

No. 54626.

Supreme Court of Iowa.

Jan. 14, 1972.

James F. Fowler and Eugene Olson, Asst. City Attys., Des Moines, for appellant.

J. Blaine Phipps, Des Moines, for intervenor-appellant.

Robert G. Riley, Des Moines, for appellees.

MASON, Justice.

This is an appeal by defendant Des Moines Zoning Board of Adjustment, hereinafter referred to as the Board, and Jerry's Homes, Inc., hereinafter referred to as intervenor, from a judgment of the Polk district court in a special certiorari proceeding pursuant to sections 414.15–414.19, The Code, 1966, reversing a decision of the Board, granting a zoning variance to intervenor, and directing the Board to enter an order denying the variance. The variance had allowed intervenor to construct a home on lot 19, Taylor Park in contravention of section 2A–26, Des Moines Zoning Ordinance.

There is no dispute as to the factual background giving rise to this lawsuit.

July 15, 1953, defendant city enacted a zoning ordinance affecting the use and occupancy of all property in the city including the lots involved in this matter. This ordinance contained an exception to the general regulations, section 2A–44, in which it was provided that a single-family dwelling could be located on any lot of official record as of the effective date of the ordinance, regardless of the lot's area or width. July 16, 1965, section 2A–44 was amended in a number of respects and re-enacted as section 2A–26 with a limitation on the existing lot of record exception:

"EXCEPTIONS AND MODIFICATIONS. The regulations specified in this ordinance shall be subject to the following exceptions and interpretations:

"(A) *Use of Existing Lots of Record.* In any district where dwellings are permitted, a single-family dwelling may be located on any lot or plot of official record as of the effective date of this ordinance irrespective of its area or width; provided, however, that if two or more lots or plots with continuous frontage in single ownership are of record as of the effective date of this ordinance such lots shall be considered buildable only in combinations that most nearly approximate the lot width and area requirements of the district in which located. The following yard requirements shall apply:

"1. The sum of the side yards of any such lot or plot shall not be less than thirty

(30) percent of the width of the lot, but in no case less than ten (10) percent of the width of the lot for any one side yard.

"2. The depth of the rear yard of any such lot need not exceed twenty (20) percent of the depth of the lots, but in no case less than ten (10) feet."

Lots 19 and 20 in Taylor Park, a plat now in and forming a part of the city of Des Moines, are adjoining lots located on the north side of Welker Avenue and are zoned R–1 Single Family Residence District. Each lot has a 50-foot frontage on Welker and is approximately 136 feet deep, substantially less width and lot area than is required by R–1 zoning for construction of single-family dwellings which calls for a minimum lot area of 10,000 square feet and lot width of 80 feet.

A residence had been erected on lot 20 in 1923. Both lots were held in single ownership of record from March 1949 until December 29, 1966.

Intervenor had acquired title to lots 19 and 20 by deed dated December 20, 1966, from Martin and wife who had obtained title to these lots in 1961. Nine days later intervenor transferred title to lot 20 to Mahr and wife but retained ownership of lot 19 to time of trial.

October 3, 1969, intervenor applied for a building permit to construct a single-family dwelling on lot 19. He received the permit three days later. Intervenor did not advise the City Zoning Enforcement Office of his previous ownership of lot 20, nor did that office make any independent check to determine whether lot 19 was held in single ownership with another contiguous substandard lot as of July 16, 1965.

Intervenor immediately surveyed the ground, excavated a basement, contracted for the erection of the basement wall, poured footings and otherwise invested approximately $3900 in lot 19. Contemporaneously, the zoning office was informed lots 19 and 20 had been previously held in single ownership. On October 17, 1965,

intervenor's building permit was revoked and intervenor stopped construction.

Intervenor appealed to the Board who subsequently issued a variance allowing construction, pursuant to section 414.12, The Code, 1966.

"414.12. Powers. The board of adjustment shall have the following powers:

"1. To hear and decide appeals where it is alleged there is error in any order, requirement, decision, or determination made by an administrative official in the enforcement of this chapter or of any ordinance adopted pursuant thereto.

" *     *     *     *     *     *

"3. To authorize upon appeal in specific cases such variance from the terms of the ordinance as will not be contrary to the public interest, where owing to special conditions a literal enforcement of the provisions of the ordinance will result in unnecessary hardship, and so that the spirit of the ordinance shall be observed and substantial justice done."

The statutory provisions referred to in this opinion are to the 1966 Code. However, these sections bearing the same numbers appear without change in the Code, 1971.

November 14, 1969, after notice and a public hearing was had, the Board's decision was filed granting intervenor's appeal for:

"permission to divide a lot of record into two parcels. Lot 20, upon which a dwelling presently exists at 4001 Welker Avenue requires a variance of 30 feet of the required 80 feet minimum lot width, 3 feet of the required 8 feet least width on one side and 3220 sq. ft. of the required 10,000 sq. ft. on lot area. Lot 19, required a variance of 30 feet of the required 80 feet minimum lot width, 3 feet of the required 8 feet least width on one side and 3,158 sq. ft. of the required 10,000 sq. ft. of lot area on which a 28 foot by 24 foot single family dwelling is proposed at 4003 Welker Ave-

nue Property concerned is lots 19 and 20, Taylor Park—100 feet by 136.25 feet—presently located in an R–1 Single Family Residence District."

Richard R. and Linda Ruble, owners of neighboring lot 18, Taylor Park, petitioned for writ of certiorari claiming illegality in the decision of the Board. They will be hereinafter referred to as plaintiffs. Their petition was filed pursuant to Code section 414.15 which provides:

"Petition for certiorari. Any person or persons, jointly or severally, aggrieved by any decision of the board of adjustment under the provisions of this chapter, or any taxpayer, or any officer, department, board, or bureau of the municipality, may present to a court of record a petition, duly verified, setting forth that such decision is illegal, in whole or in part, specifying the grounds of the illegality. Such petition shall be presented to the court within thirty days after the filing of the decision in the office of the board."

Plaintiffs alleged the Board's decision and resolution granting the variance was "erroneous and illegal, inasmuch as the action of the defendant Board in the enactment thereof and in the granting of the requested division and variances was arbitrary, unreasonable, unjust, out of keeping with the spirit of the zoning statutes, and in express contradiction of the provisions of section 2A–26 of the municipal code aforesaid; that a proper application of said section would prohibit the construction of a single-family dwelling on lot 19 * * * said decision serves none of the purposes of the zoning ordinance, chapter 2–A, fails to promote the health, safety, and general welfare of the community, as required in said chapter 2–A, and is so unreasonable as to constitute an arbitrary and capricious interference with the basic right of private property, and particularly the property owned by these plaintiffs."

Plaintiffs asked that the decision of the Board be reversed and that the Board be directed to enter an order denying intervenor's appeal.

The court found lots 19 and 20 were held in single ownership on July 16, 1965, the date section 2A–26 of the Des Moines Zoning Ordinance became effective, and concluded under the provisions of the zoning ordinance in effect December 30, 1966, lots 19 and 20 "could be considered buildable only in combinations that most nearly approximate the lot width and area requirements of the district in which located. A single residence on lots 19 and 20 would more nearly approximate the lot width and area requirements than would one residence on each of the 50 foot lots."

The court further concluded that lot 19 was not a buildable lot on December 30, 1966, following intervenor's conveyance of lot 20 to Mahr or on the date of the hearing before the Board and a variance was required from the Board before a building permit could be issued.

A lot is defined in section 2A–3 of the Des Moines Zoning Ordinance in this manner:

"Lot: For the purposes of this ordinance, a lot is a parcel of land of at least sufficient size to meet minimum zoning requirements for use, coverage and area and to provide such yards and other open space as are herein required. Such lot shall have frontage on a public street and may consist of: (a) A single lot of record; (b) A portion of a lot of record; (c) A combination of complete lots of record; of complete lots of record and portions of lots of record; or of portions of lots of record; and (d) A Parcel of land described by metes and bounds; provided that in no case of division or combination shall any residual lot or parcel be created which does not meet the requirements of this ordinance."

Section 2A–29 of this ordinance provides in pertinent part:

"Section 2A–29. BOARD OF ADJUSTMENT; POWERS AND DUTIES.

" *     *     *     *     *     *

"(B) To grant a variation in the regulations when a property owner can show that

his property was acquired in good faith and where by reason of exceptional narrowness, shallowness, or shape of a specific piece of property, * * * the strict application of the terms of this ordinance actually prohibits the use of his property in a manner reasonably similar to that of other property in the district, and where the Board is satisfied under the evidence before it that:

" *       *       *       *       *       *

"2. The plight of the owner of the land in question is due to the unique circumstances shown to the Board and is not of his own making; * * *

" *       *       *       *       *       *

According to the minutes of the hearing on intervenor's appeal to the Board, the reason for granting the appeal cited was "Unique situation would permit the granting of the appeal."

Plaintiffs maintained at trial evidence of unnecessary hardship before the Board was insufficient upon which to base the order granting the variance involved.

Counsel for the Board tells us the basic issue before the trial court was whether the Board acted "illegally" within the meaning of chapter 414 in granting the variance to intervenor.

The trial court noted a determination of the issue presented the question as to what point in time determination of unnecessary hardship must be made; that intervenor and defendant urged such determination was to be made at the time the appeal was taken.

The court concluded determination of whether a strict enforcement of the zoning ordinance would impose an unnecessary hardship on the intervenor must be made at the time the property was divided; the Board had no authority to grant the variance as to lot 19 and should be directed to enter an order and decision denying intervenor's appeal with respect to this lot; and the writ of certiorari should be sus-tained. The court ordered judgment accordingly.

I. Intervenor and the Board file separate briefs and arguments and each assign separate errors relied on for reversal.

At this point we set forth some general statements of law bearing on zoning proceedings which appear to us to be relevant to both appeals.

Code section 414.18 provides: "If upon the hearing which shall be tried de novo it shall appear to the court that testimony is necessary for the proper disposition of the matter, it may take evidence * * * which shall constitute a part of the proceedings upon which the determination of the court shall be made."

In Deardorf v. Board of Adjustment, etc., 254 Iowa 380, 383–384, 118 N.W.2d 78, 80, this court, in considering the effect of this statute on the extent of our review in such certiorari proceedings, expressed its view in this manner:

" * * * The trial de novo section 414.-18 permits should be confined to the questions of illegality raised by the petition for the writ. The statute does not provide for trial de novo by equitable proceedings nor that review in this court shall be de novo. * * * [citing authorities]. Our review is on assigned errors, the trial court's findings of fact having the force of a jury verdict. * * *."

A similar statement as to the extent of our review appears in Vogelaar v. Polk County Zoning Bd. of Adjustment, 188 N.W.2d 860, 863 (Iowa 1971), where other Iowa cases are collected.

■ The burden is on those applying for variance to show that enforcement of the zoning ordinance or denial of the variance would result in unnecessary hardship to them, as that term is used in section 414.-12, subsection 3. Deardorf v. Board of Adjustment, etc., 254 Iowa at 384–385, 118 N.W.2d at 80, and citations.

■ As used in the context of zoning ordinances, a "variance" is authority extended to the owner to use property in a manner forbidden by the zoning enactment, where literal enforcement would cause him undue hardship. Vogelaar v. Polk County Zoning Bd. of Adjustment, 188 N.W.2d at 862, and authorities cited.

■ Plaintiffs had the burden in this certiorari proceeding to show illegality of the Board's order granting the variance. Deardorf v. Board of Adjustment, etc., 254 Iowa at 385–386, 118 N.W.2d at 81.

"It is fundamental that the board may not legislate. It exercises only administrative and quasi judicial power strictly within the limitations of section 414.12, 3. * * The board cannot amend or set aside the zoning ordinance under the guise of a variance. * * * [citing authorities].

" *    *    *    *    *    *

"It is well recognized that the power to grant a variance should be exercised sparingly and with great caution or in exceptional instances only. * * * [citing authorities]." Deardorf v. Board of Adjustment, etc., 254 Iowa at 389–390, 118 N.W.2d at 83.

This statement of law appearing in the Deardorf opinion, 254 Iowa at 385, 118 N.W.2d at 81, is apposite here:

" * * * Our statute does not require the board to make findings of fact nor a record of the reasons for its action. * * [citing authority]. Certainly, however, if there was no showing before the board of the requisite unnecessary hardship to the owners if a variance were denied, its order is illegal within the meaning of Code section 414.15 * * * and aggrieved parties such as plaintiffs are entitled to have it annulled in this action. ' * * * proceedings * * unsupported by, facts on which power to act depends, or within which the power must be exercised, are illegal.' * * * [citing authority]."

II. The Board in its appeal assigns eight errors relied upon for reversal, arguing the first and second assignments together. It is urged the trial court erred in ruling, (7) the determination of "unnecessary hardship" under section 414.12(3), The Code, should be based on conditions existing on December 30, 1966, (the date stipulated intervenor's deed conveying lot 20 to Mahr and wife was filed for record), and (2) there was no substantial, competent evidence to support a finding intervenor's hardship was not of his own making.

As previously noted, the trial court ruled determination of one of the statutory prerequisites to granting a variance, "unnecessary hardship," should be made as of December 30, 1966, the date lots 19 and 20 were divided. The regulation prohibiting erection of a home on lot 19 was effective as of July 16, 1965. Before that date—that is, before section 2A–44 was re-enacted as 2A–26—owners of lot 19, also owning lot 20, presumably could build on lot 19. The revision of July 16, 1965, transformed lot 19 into a nonbuildable lot.

Defendant argues in this court determination of "unnecessary hardship" should consequently have been made with reference to the conditions existing July 16, 1965. It is to be recalled the trial court noted in its decree defendant and intervenor were there contending such determination was to be made at the time the appeal was taken. Apparently, defendant is assuming that by determination as of the 1965 date, an owner would be entitled to a variance since the statutory revision worked an unnecessary hardship on the owner as of 1965, and that such grounds for variance should be extended to later owners. Whether such extension should be accorded need not be considered here, since defendant's major premise is faulty. Defendant's assumption that owners as of 1965 would have sufficient grounds for variance is unsupported in the record.

Nowhere in the record is it clear that owners of lot 19 and 20, as of 1965, would be granted variance enabling them to erect

a house on lot 19. As counsel for intervenor stated at hearing: " * * * The ordinance [2A–26] is now being interpreted that if an individual owned two or more lots, then he has to most nearly conform to the requirements of the ordinance. * *." To accept defendant's argument would admit that all owners of contiguous, substandard lots would be entitled to a variance which would thwart the purpose of the 1965 proviso.

■ While, in fact, the revision of 1965 creates a hardship, it per se is not an unnecessary one. In Deardorf v. Board of Adjustment, etc., supra, 254 Iowa at 386, 118 N.W.2d at 81, the court said:

"No Iowa decision defining the term 'unnecessary hardship' has come to our attention. Definitions found in outside opinions differ in the language used, but not greatly in the essential meaning of the term. Perhaps the most precise definition we have found is that adopted in several New York cases. They hold that before a variance may be granted on the ground of unnecessary hardship it must be shown: (1) the land in question cannot yield a reasonable return if used only for a purpose allowed in that zone; (2) *the plight of the owner is due to unique circumstances and not to the general conditions in the neighborhood which may reflect the unreasonableness of the zoning ordinance itself;* and (3) the use to be authorized by the variance will not alter the essential character of the locality. * * * [citing authorities]." (emphasis supplied)

The Deardorf opinion makes reference to encyclopedias, treatises, annotations and cases from other jurisdictions which contain other illustrative definitions of unnecessary hardship.

The district court concluded:

" * * * On December 30, 1966, Jerry's Homes was in no different position than other owners in the vicinity who owned lots with 100 feet of combined frontage who may then or who may later desire to dispose of a portion of their lot for building purposes. The prohibition against diminishing the size of the lots was a necessary hardship imposed upon Jerry's Homes along with all other owners in like situations. * * *."

The court further concluded that even though it were to assume, without deciding, determination of unnecessary hardship should be made at the time the appeal was taken, the result would be the same since the hardship which intervenor found himself facing at the time of trial was of his own making and was attributable to his failure to make adequate inquiry as to the provisions of the zoning ordinance and his failure to fully disclose the circumstances of joint ownership of lots on July 16, 1965.

Section 2A–29(B)2 of the Des Moines Zoning Ordinance, set out, supra, requires in substance before a variance may be granted, applicant must show, among other things, his plight is due to unique circumstances and is not of his own making. This prerequisite is consistent with provisions of Code section 414.12 previously quoted, and with that portion of the Deardorf opinion relating to unnecessary hardship emphasized earlier.

After pointing out the fact no reference was made at the hearing before the Board to this section of the zoning ordinance, the court concluded that a finding intervenor's plight was not of his own making was nevertheless inherent in the Board's decision granting the variance and such finding was not supported by substantial, competent evidence in the proceedings before the Board.

■ The trial court did not err, under this record, in deciding determination of unnecessary hardship should be based on conditions existing on December 30, 1966.

III. The Board makes the additional argument in support of its second assignment that its findings in a special certiorari proceeding should be upheld by the trial court if supported by substantial evidence; since it was not required to make findings

of fact, the Board's proceedings are presumed to be regular; and a reviewing court must not substitute its judgment for that of the Board. In this connection the Board stresses the fact it had made a finding intervenor's plight was not of his own making.

In division I, supra, we acknowledged that our statute does not require the board to make findings of fact or record the reason for its actions. Deardorf v. Board of Adjustment, etc., 254 Iowa at 385, 118 N.W.2d at 81. However, in that division we called attention to the fact the court stated if there was no showing before the board of the requisite unnecessary hardship to the owners if a variance were denied, its order is illegal within the meaning of section 414.15 and proceedings unsupported by facts on which power to act depends or within which the power must be exercised are illegal. The district court in the case before us determined there was no support in the record for the Board's finding intervenor's plight was not of his own making.

Counsel cites us 3 Anderson, American Law of Zoning, 1968, section 21.17, for the proposition that a reviewing court may not substitute its judgment for that of the board. The author points out the reviewing court will examine the record upon which the board's decision is based to determine whether the findings of the board are supported by substantial evidence.

█ █ Intervenor repeatedly insists it acted in good faith and without knowledge of the zoning requirement of 2A–26. The court found there was insufficient evidence before the Board to show intervenor had made such an investigation or had received such firm commitments from the city of Des Moines as would permit it to claim its ignorance of the law or the assurances received by it from the city were such as would excuse violation of the zoning ordinance.

The trial court stated, " * * * To sustain defendant Board's decision in this case is to hold the Des Moines Zoning Ordinance applies only to those persons who are conscientious enough to adequately inform themselves of its provisions and who have actual knowledge of its terms. * * *." Section 2A–29(B)2 relates to plight of an owner's making; it does not allow for a subjective evaluation of the owner's intention.

The Board does not convince us that this assignment has merit.

IV. The Board combines in argument its remaining assigned errors, asserting the trial court erred in: (3) ruling there was insufficient evidence before the Board to find compliance with the zoning ordinance would impose an "unnecessary hardship" on intervenor; (4) concluding the Board's grant of variance was contrary to public interest; (5) overruling the Board's motion to dismiss the petition and annul the writ of certiorari made at the close of plaintiffs' evidence; (6) overruling the above motion made after the Board had rested; (7) concluding the Board acted illegally in granting intervenor's requested variance; and (8) substituting its judgment for that of the Board.

The Board's discussion of these alleged errors presents little more for consideration than its earlier arguments. One significant objection, however, is that the New York standard for determining "unnecessary hardship," as relied upon in the Deardorf opinion, is applicable only to use variances and should not be applied to requests for area variance. This proposition does not necessarily follow from Deardorf. Whereas the Board cites authority limiting the New York standard to use variances, Deardorf applied the test to a situation involving both use and area zoning restrictions. This court in no way indicated an intention to limit application to instances where legitimacy of use variances is in issue when it used this language: " * * * As stated, the variance permits departure from the ordinance not only in the matter of height but *also in yard width and, especially, lot area.*" (emphasis supplied)

254 Iowa at 387, 118 N.W.2d at 82. The Deardorf case has not yet been criticized for that determination by other jurisdictions.

The ultimate question to be decided on appeal is the "illegality" of the Board's decision. Anderson v. Jester, 206 Iowa 452, 462–463, 221 N.W. 354, 359. To reach that answer or conclusion, the court has first resolved the problems associated with "unnecessary hardship"—an issue more directly addressed in the Board's first two assignments of error.

Examination of the court's judgment convinces us that it is based on a finding of illegality and that the grant of variance was contrary to public interest. The finding of illegality is supported by the statement from Deardorf v. Board of Adjustment, etc., quoted in divisions I and III, supra, which results when there is no showing of unnecessary hardship to the owner if a variance is denied.

■ Intervenor, as well as the Board, questions the trial court's conclusion the variance was contrary to public interest. The Board asserts there was substantial, competent evidence before it the variance was not contrary to public interest and, since the issue is therefore at least debatable, the Board's judgment should not be disturbed by the courts. See Zilm v. Zoning Board of Adjustment, 260 Iowa 787, 794–795, 150 N.W.2d 606, 611.

The Board's "substantial, competent evidence" consists of conclusions by intervenor and its counsel that no public interest would be violated. No other testimony was introduced to support that conclusion. On the other hand, considerable objection was heard from property owners throughout the vicinity. Intervenor argues owners of adjoining property do not constitute the public and their collective interests are not a "public interest." It cites in support Huttig v. City of Richmond Heights, 372 S.W. 2d 833, 842–843 (Mo., 1963), a case where adjoining property owners sought to prevent certain rezoning. In variance cases,

"public interest" has before been interpreted to be that interest of owners and occupants of neighboring properties. See Application of Devereux Foundation, 351 Pa. 478, 41 A.2d 744, 747, 168 A.L.R. 37, appeal dismissed 326 U.S. 686, 66 S.Ct. 89, 90 L. Ed. 403. (Devereux has been cited for another proposition in Deardorf). Other cases recognizing the interest of neighbors as an element of public interest include Priest v. Griffin, 284 Ala. 97, 222 So.2d 353, 355–356; Miller v. Board of Appeals of City of Chicago, 33 Ill.App.2d 163, 178 N.E.2d 658 (abstract only was published); Oursler v. Board of Zoning Appeals, 204 Md. 397, 104 A.2d 568, 570; Di Rico v. Board of Appeals of Quincy, 341 Mass. 607, 171 N.E.2d 144, 145–146; Zuena v. Cranston Zoning Board of Review, 102 R.I. 299, 229 A.2d 846. See also 101 C.J.S. Zoning § 288; 58 Am.Jur., Zoning, section 199; Rhyne, Municipal Law, sections 32–19.

We find no error in the trial court's conclusion that the grant of variance by the Board was contrary to public interest.

V. Intervenor, in its brief, submits six assigned errors for consideration. One pertaining to "public interest," (sixth assignment), has already been discussed. Intervenor urges the trial court erred: (1) in allowing plaintiff to amend his petition after trial had begun, contrary to rule 88, Rules of Civil Procedure, and section 414.-15, The Code; (2) in failing to consider the issue of a "vested interest" in the building permit; (3) in considering irrelevant, immaterial and prejudicial matter over objection and in failing to show in its decision that it had not considered the same; (4) in construing the ordinance to require compliance with 80 foot lots and reached the conclusion that lot 19 was not a buildable lot; and (5) when it found and ruled that there was insufficient showing of unnecessary hardship before the board of adjustment and that the Board exceeded the powers granted it under section 414.12(3), Code.

VI. We have previously set out paragraph 7 of plaintiffs' petition. The morn-

ing of the trial, but before evidence was taken, (as we understand the record), plaintiffs moved the court to amend their petition by adding as paragraph 7A the following:

"7A. That said decision and resolution was and is erroneous and illegal for the further reason that the board exceed (sic) the powers granted it under Iowa Code section 414.2[12](3) in that it authorized said variance when the same was contrary to the public interest, and when it was not shown or proved to said board that owing to any special conditions the literal enforcement of the provisions of the ordinance would result in unnecessary hardship; and further exceeded its powers under section 2A–29 of the aforesaid ordinance, and particularly those provisions set out in subparagraph B of said ordinance section 2A–29."

The court allowed the amendment over the resistance of the Board and intervenor. Intervenor now contends the court abused its discretion in permitting the amendment.

▮ An amendment offered after responsive pleadings have been filed should not be allowed if it materially changes the issues involved. Akkerman v. Gersema, 260 Iowa 432, 439, 149 N.W.2d 856, 860. A trial court has broad discretion in permitting or denying amendments and unless the discretion is abused the appellate court will not interfere. Townsend v. Mid-America Pipeline Company, 168 N.W.2d 30, 37 (Iowa 1969). To allow the amendment is the rule, not the exception. Lewis v. Buena Vista Mutual Insurance Association, 183 N.W.2d 198, 200 (Iowa 1971).

▮ The question is whether plaintiffs' additional allegations, tending to support a finding of illegality, so materially altered the issues involved as to constitute the court's ruling an abuse of discretion.

We find no abuse of discretion in the trial court's permitting the amendment.

▮ VII. In its next assignment of error intervenor asserts it obtained a vested interest in the building permit issued by the city and argues the district court erred in failing to consider this interest as raised in the petition for intervention and testimony offered in support thereof.

The intervenor relies on Rehmann v. City of Des Moines, 200 Iowa 286, 291–292, 204 N.W. 267, 270, 40 A.L.R. 922, where this court held a building permit duly and legally issued by a municipality is more than a mere license revokable at the will of the licensor and when the permittee if to some extent acted thereon and thereby incurred expenses such permit is not revokable on the ground the proposed building would be objectionable to residents of the neighborhood.

However, in Crow v. Board, 227 Iowa 324, 328, 288 N.W. 145, 146, this court held such pronouncement will not apply if the building permit was not legally granted.

In considering how to determine whether the permit was legally granted, the court in Crow has this to say:

" * * * Inquiry should be directed to the original act of the building inspector in issuing the permit. Was the permit valid when issued by the building inspector?"

In this connection the Crow opinion suggests that where the ordinance is clear and explicit upon the proposition, its very words would answer the foregoing question. We find the meaning of 2A–26 of the ordinance set out, supra, to be clear and explicit. The permit was invalid in its inception and during the time construction work was in progress. It follows intervenor's argument is without merit.

VIII. Intervenor's third assignment challenges the court's consideration of testimony on direct examination over proper objection.

The testimony complained of concerns, (a) intervenor's prior experience and familiarization with zoning ordinance generally and application for variance from zoning restrictions, and (b) the zoning enforce-

**508**

ment officer's interpretation of interacting sections of the Des Moines Zoning Ordinance.

It relies on Bellew v. Iowa State Highway Commission, 171 N.W.2d 284, 291 (Iowa 1969), where the court held that permitting certain testimony, on direct examination over proper objections, was error and, in absence of affirmative statements in findings of trial court sitting as jury that court had discarded the improper evidence, prejudice is presumed and the case reversed.

The question is whether intervenor preserved any claimed error involving consideration of this testimony in the trial court. Examination of the record discloses intervenor objected to the testimony of Jerry Grubb, president of intervenor, as "irrelevant, immaterial, had no bearing on the issues in the matter before the court and was highly prejudicial to the intervenor-defendant and by the city that same was irrelevant." Intervenor's objection to the testimony of the zoning enforcement officer was that the "question, first of all, as being leading and suggestive, calling for an opinion and conclusion. It's irrelevant, immaterial, has no bearings on the issues in this case. Is not proper examination of this witness because it was never raised, this portion, question directed to a specific section of the ordinance was never raised in the initial writ, nor any amendment thereto. Therefore, it's irrelevant and immaterial."

Frederick v. Shorman, 259 Iowa 1050, 1060–1061, 147 N.W.2d 478, 485, quotes this statement from Ferris v. Riley, 251 Iowa 400, 408, 101 N.W.2d 176, 180, 181:

" 'It is elementary that an objection to offered evidence must be sufficiently specific to advise the trial court why it is inadmissible. The court should not be left to speculate as to whether the evidence is in fact subject to some infirmity which the objection does not point out.

" 'In Jackson v. Chicago, Milwaukee, Saint Paul & Pacific Railroad Co., 238

Iowa 1253, 1263, 30 N.W.2d 97, 103, we said: "Ordinarily the objection should point out in what particular or particulars the offered evidence is inadmissible and where this is not done there is no proper basis for reversal unless the grounds of the objection are obvious." ' "

Linge v. Iowa State Highway Comm., 260 Iowa 1226, 1231–1232, 150 N.W.2d 642, 645, has this statement: " 'Ordinarily, when an objection is made to the introduction of testimony on the ground that it is incompetent, counsel making the objection should point out in what particular or particulars the evidence * * * is objectionable, and unless this is done we have held that it does not constitute a proper basis for a reversal.' " See also Bengford v. Carlem Corporation, 156 N.W.2d 855, 865 (Iowa 1968).

These authorities give us serious doubt that intervenor preserved any error for consideration in this court.

We have examined other objections made to the testimony of the zoning enforcement officer and find them to be of no help to intervenor in this assignment.

In any event, intervenor has not convinced us the testimony of this witness was irrelevant. See McCormick on Evidence, section 152. In relation to the objection to intervenor's prior experience in making applications for variances, the record shows us he repeatedly asserted his own good faith long before "plaintiffs put it in issue." Further, we are not convinced the district court attach any significance to the testimony when it stated: " * * * To sustain the defendant Board's decision in this case is to hold that the Des Moines Zoning Ordinance applies only to those persons who are conscientious enough to adequately inform themselves of its provisions and who have actual knowledge of its terms. * * *."

In determining this assignment is without merit, we have given intervenor the benefit of any doubt as to its objections pre-

serving any error for consideration in this court.

 IX. In contending the court erred in so construing the ordinance to require compliance with 80 foot lots and in reaching the conclusion lot 19 was not a buildable lot, intervenor argues in part a of this assignment for a different interpretation of section 2A–26, Des Moines Zoning Ordinance. It asks the court to dismiss the interpretation rendered by the zoning enforcement officer, the Board and the trial court. Intervenor offers no other specific interpretation but only asserts 2A–26 should be "designed to allow an owner to make reasonable use of his property * * *." In part b, intervenor argues that the trial court's interpretation of 2A–26 has the effect of rendering the ordinance unconstitutional since it "confiscates" lot 19. Here again, to seriously entertain intervenor's argument would require totally ignoring the history of lots 19 and 20, their single and contemporaneous ownership, and their transformation into a single, usable lot of record by the workings of 2A–26.

X. In its remaining assignment intervenor argues the merits of the trial court's resolution of the "unnecessary hardship" issue. It adds little to the discussion of the question considered supra. Finally, it urges the Board did not exceed its powers under section 414.12(3), Code. Intervenor's "argument" on these points states nothing more than conclusions and does not resolve the question discussed more fully by the Board.

We have considered every assignment of error made by the Board and intervenor in their briefs and arguments as well as all brief points urged in support thereof whether we have made specific reference to their contentions by individual treatment or not.

We find no reversible error and the case is therefore—Affirmed on both appeals.

All justices concur, except HARRIS, J., who takes no part.