Monte H. GREENAWALT, Appellant,

v.

ZONING BOARD OF ADJUSTMENT OF
the CITY OF DAVENPORT, Iowa; and
Albert Zimmerman, Louis Soenke, Ed-
ward Waite, Ira Kaiser, and Joseph
Tomlinson, Members of Board of Ad-
justment, Appellees.

John E. and Beverly A. Sinning,
Intervenors.

No. 83–440.

Supreme Court of Iowa.

Feb. 15, 1984.

538

Walter Newport and Stephen P. Wing of Walter Newport & Associates, Davenport, for appellant.

Michael J. Meloy, City Atty., for appellees board and its members.

Robert V.P. Waterman of Lane & Waterman, Davenport, for intervenors.

Considered by REYNOLDSON, C.J., and UHLENHOPP, HARRIS, McCORMICK, and WOLLE, JJ.

UHLENHOPP, Justice.

This appeal involves a decision by the zoning board of adjustment of Davenport, Iowa (board), denying an application for a variance from an ordinance limiting the height of front-yard fences to forty-two inches. Monte H. Greenawalt applied for a variance for the purpose of constructing a fence six feet in height.

The property for which the variance was requested is a three and one-half acre parcel known as "Oak Knoll", a residence located in an old and exclusive Davenport neighborhood. The surrounding area is hilly and wooded, and the lots are typically quite large; Oak Knoll is among the largest. The house itself sits in a park-like

setting on a hill overlooking the Mississippi River. See accompanying rough sketch.

Greenawalt purchased Oak Knoll in 1978. He remodeled and restored the property. In 1980 he contracted to have a six-foot fence constructed on the boundary of the property at a cost of nearly $25,000. Part of the fence was to be wrought iron and the remainder was to be chain-link. He made the decision to enclose his property after several incidents of vandalism and after receiving the following letter from his insurance company:

MONTE H. GREENWALT PROPERTY

Lately we have witnessed a high incidence of vandalism and burglary under homeowners policies with higher valued homes and relative to silverware and jewelry losses.

With this in mind I recommend and advise that your dwelling be equipped with interior and exterior alarms. In addition to this, I suggest a perimeter fence with a locking iron gate to the driveway. The fence should be high enough to dissuade the amateur.

Several of our Carriers have already sent notices and advised that higher valued homes must have these protection systems or they will decline to renew policies. I expect this trend to continue as long as the gold and silver markets fluctuate as they have in the past.

If you have any questions, please advise.

While discussing his fencing plans with a neighbor, John Sinning, Greenawalt learned that a city zoning ordinance limits front yard fences to a maximum height of

forty-two inches. Part of that ordinance reads as follows: "In no case shall a fence be erected to a height exceeding forty-two inches in a front yard." Davenport, Iowa, Ordinances, ch. 42, art. XXII, § 42–99(2)(c) (1973).

Before beginning construction of the fence, Greenawalt contacted the Davenport building department to ascertain whether he could legally build it. He made three such contacts and each time was told the fence would be legal and a building permit would not be necessary. When the fence was nearly ninety percent installed, he received a notice from the city stating that it was illegal.

Greenawalt stopped construction and applied for a variance. After two hearings the board of adjustment denied the application. In doing so, the board also decided that because of the peculiar shape of the property, Greenawalt had three front yards. The practical effect was that most of the property was front yard, and that most of the fence thus violated the ordinance.

After his application for a variance was denied, Greenawalt obtained a writ of certiorari from district court pursuant to section 414.15 of the Iowa Code (1979). Following trial, the court annulled the writ. This appeal by Greenawalt followed.

■ I. *Scope of review.* The district court's findings of fact have the effect of a special jury verdict, and an appeal to this court is like that in an ordinary proceeding. *Graziano v. Zoning Board of Adjustment*, 323 N.W.2d 233, 236–37 (Iowa 1982); *Grandview Baptist Church v. Zoning Board of Adjustment*, 301 N.W.2d 704, 706–07 (Iowa 1981); *Weldon v. Zoning Board of Adjustment*, 250 N.W.2d 396, 401 (Iowa 1977); Iowa R.Civ.P. 318.

II. *Legality of board's decision.* Greenawalt initially claims that the denial of his application for a variance was arbitrary, capricious, and unreasonable, and therefore invalid.

■ In resolving this claim, we first examine the background and purpose of a zoning variance. A variance is generally defined as "an authorization for the construction or maintenance of a use of land, which is prohibited by a zoning ordinance." 3 Anderson, *American Law of Zoning* § 18.02, at 136 (1968) (hereinafter Anderson). It is " 'designed as an escape hatch from the literal terms of the ordinance which, if strictly applied, would deny a property owner all beneficial use of his land and thus amount to a confiscation.' " *Id.* at 137 (quoting *Lincourt v. Zoning Board of Review*, 98 R.I. 305, 310, 201 A.2d 482, 485 (1964)). Thus a variance is intended to strike a balance: on the one hand, it avoids constitutional challenges in instances where strict application would amount to an unconstitutional taking, while on the other hand, it is not a tool to be "so misused as to injure property owners and destroy the community plan." 3 Anderson § 18.16, at 170. As stated in *People ex rel. Fordham Manor Reformed Church v. Walsh*, 244 N.Y. 280, 290, 155 N.E. 575, 578 (1927), "There has been confided to the Board a delicate jurisdiction and one easily abused."

In Iowa a board of adjustment has power to authorize

such variance from the terms of [an] ordinance as will not be contrary to the public interest, where owing to special conditions a literal enforcement of the provisions of the ordinance will result in *unnecessary hardship*, and so that the spirit of the ordinance shall be observed and substantial justice done.

Iowa Code § 414.12(3) (emphasis added).

This court initially gave content to the standard of "unnecessary hardship" in *Deardorf v. Zoning Board of Adjustment*, 254 Iowa 380, 118 N.W.2d 78 (1962). It adopted the definition of that term constructed by the New York Court of Appeals in *Otto v. Steinhilber*, 282 N.Y. 71, 24 N.E.2d 851 (1939), *reh'g denied*, 282 N.Y. 681, 26 N.E.2d 811 (1940). We have since reaffirmed that definition in *Board of Adjustment v. Ruble*, 193 N.W.2d 497 (Iowa 1972), and *Graziano v. Board of Adjustment*, 323 N.W.2d 233 (Iowa 1982).

Under these decisions an applicant for a zoning variance establishes unnecessary hardship by showing all of the following elements:

 (1) [T]he land in question cannot yield a reasonable return if used only for a purpose allowed in that zone;

 (2) [T]he plight of the owner is due to unique circumstances and not to the general conditions in the neighborhood, which may reflect the unreasonableness of the zoning ordinance itself; and

 (3) [T]he use to be authorized by the variance will not alter the essential character of the locality.

*Graziano,* 323 N.W.2d at 236; *Ruble,* 193 N.W.2d at 504; *Deardorf,* 254 Iowa at 386, 118 N.W.2d at 81. The City of Davenport has adopted the same definition. Davenport, Iowa, Ordinances, ch. 42, art. XXVII, § 42–120(4) (1973).

■■■ The burden is on the applicant to show all three of the elements. A failure to demonstrate one of them requires the board to deny the application. *Ruble,* 193 N.W.2d at 502; *Deardorf,* 254 Iowa at 384, 118 N.W.2d at 80. On the other hand, if the applicant carries his burden regarding each element he is to be granted a variance and failure to grant it renders board action arbitrary, capricious, and unreasonable. In this case the board found that Greenawalt did not establish any of the three elements and the district court affirmed. We turn to the record to ascertain whether substantial evidence supports the holding of the district court as to at least one of the three essential elements. Greenawalt's burden is particularly heavy, as he bears the burden of proof as to those elements.

A. Reasonable return. Greenawalt claims his property cannot yield "a reasonable return" unless the requested variance is granted because, without a six-foot fence, (1) he will suffer adverse economic impact due to vandalism and inability to obtain insurance and (2) he will not be able to enjoy his property peacefully.

We considered the element of a "reasonable return" in *Graziano,* 323 N.W.2d at 237. Graziano sought a variance so he could construct a duplex on a lot large enough under the ordinance to accommodate only a single-family dwelling. We said: "[T]he legal standard is not that more profit could be made if a variance is granted. The standard is that a reasonable return *could not* be garnered from a permitted use." *Id.* (emphasis added). We upheld denial of the application.

An explanation of the meaning of "cannot yield a reasonable return" is set forth in 3 Anderson § 18.17, at 179–83 (emphasis added):

A zoning regulation imposes unnecessary hardship if property to which it applies cannot yield a reasonable return from *any* permitted use. Lack of a reasonable return may be shown by proof that the owner has been deprived of *all* beneficial use of his land. All beneficial use is said to have been lost where the land is not suitable for any use permitted by the zoning ordinance. For example, where land is located in a district limited to residential or commercial use, and where lack of transportation, sparse development, and the refusal of lending institutions to advance money for residential or commercial uses render development consistent with the ordinance unfeasible, unnecessary hardship is said to result from literal application of the ordinance.

. . . .

An ordinance deprives a landowner of a reasonable return if all "productive use of the land" is denied. Such deprivation is shown where the land in issue has so changed that the uses for which it was originally zoned are no longer feasible.

. . . .

The burden of proving that a literal application of the ordinance will deprive the owner of a reasonable return is upon the owner of the land in question. No variance for unnecessary hardship may be granted if he fails to demonstrate loss of beneficial use. His burden is not sustained if it is shown the land is zoned for residential use, and that it is yielding a substantial return from such permitted

use. It is not sufficient to show that the value of his land has been depreciated by the zoning regulations, or that a variance would permit him to maintain a more profitable use.

We proceed to apply these principles to Greenawalt's two claims with reference to the element of a reasonable return.

■ Initially Greenawalt argues that a six-foot fence is necessary to deter the "amateur" vandal. He produced evidence of several incidents of vandalism, most of them occurring during the summer months when his swimming pool was in use. This, however, does not amount to a loss of all beneficial use of the property and does not establish the element relating to a reasonable return.

■ The question of insurability is potentially more serious, as Greenawalt's home loan can be foreclosed if his property is not properly insured. We will assume arguendo that proof of uninsurability would amount to proof of no reasonable return. The only evidence presented on this aspect, however, was the letter Greenawalt received from his insurance broker which stated in part: "Several of our Carriers have already sent notices and advised that high valued homes must have these protection systems or they will decline to renew policies." Greenawalt did not present evidence that he installed other protective devices as the letter suggested, that his insurer would actually decline to renew his policy if the fence was not installed, or that insurance was unavailable from other insurers. Nor did he explain why valuable homes nearby did not require a high fence. Substantial evidence supports the district court finding that Greenawalt did not sustain this claim.

Greenawalt also claims that his ability to enjoy his property peacefully has been infringed and that "all beneficial use" of it has thus been denied. He argues that we should consider "intangible infringement" for the reason that the property is not held for profit; it is used solely as a personal residence. He cites as authority for this

position the following definition of unnecessary hardship quoted in *Deardorf:*

"By way of a guiding principle, it may be said that a variance should be granted where, and only where, the application of the regulation in question to particular property greatly decreases or practically destroys its value for any permitted use, or where such application bears so little relationship to the purposes of zoning that, as to the property in question, the regulation is in effect confiscatory, arbitrary, unwarranted, *or unjust invasion of, or interference with a fundamental right of property.*"

254 Iowa at 387–88, 118 N.W.2d at 82 (quoting 101 C.J.S. Zoning § 290, at 1066–68 (1958), emphasis added).

■ We find no necessity, however, to determine whether an infringement of peaceful enjoyment of property used solely for residential purposes amounts to interference with a fundamental right of property and thus constitutes no reasonable return. For present purposes we will assume that it does. Such an assumption, however, would not justify the imposition of a different legal standard: the infringement of peaceful enjoyment must equal a denial of all beneficial use. On the evidence the district court could find that Greenawalt has not shown compliance with the ordinance will prevent his property from yielding a substantial return as a residence.

■ The district court's holding that Greenawalt did not establish the property cannot yield a reasonable return has substantial evidentiary support. By failing to prove one of the three elements Greenawalt has failed to establish unnecessary hardship and is not entitled to a variance.

■ B. Unique circumstances, alteration of essential character of neighborhood. Because of the adverse determination relative to a reasonable return, we are not required to consider whether Greenawalt carried his burden as to the second and third elements of unnecessary hardship. As to the second element, "unique

circumstances," we note however that a "high incidence of vandalism and burglary ... [in] higher valued homes" is a circumstance that is certainly not "unique" to Greenawalt. His home is located in an exclusive area of Davenport where "higher valued homes" are the only homes to be found. If a change is needed the proper course is an alteration in the ordinance, not the grant of variances on a case-by-case basis. 2 Anderson §. 18.33, at 228–29.

■■■ As to the third element, "alteration of the essential character of the neighborhood," the board and the district court acted within the evidence in finding that a six-foot fence would have a significant negative impact aesthetically. A fence of forty-two inches around a front yard would be significantly less obtrusive than a six-foot fence. The district court acted within the evidence as to the second and third elements.

We find substantial evidence in the record in support of the district court's decision that Greenawalt did not establish his entitlement to a variance.

III. *Vagueness.* Greenawalt raises a vagueness challenge to the part of the Davenport ordinance which limits the height of front yard fences. That part is found in chapter 42 of article XXII, and is entitled "HEIGHT, YARD, AND LOT WIDTH EXCEPTIONS & VARIATIONS." Section 42–99 of the article is divided into five subparts: (1) Height; (2) Front yards; (3) Side yards; (4) Rear yards; and (5) General yards and areas. Each subpart is further divided into lettered paragraphs. Greenawalt claims paragraph (c) of subpart 2 to be unconstitutionally vague. It reads:

(2) FRONT YARDS:

. . . .

(c) Fences in which the openings between the material of which the fence is constructed represent less than seventy percent of the total surface may be erected to a height not exceeding five feet along the boundaries of a lot, except that no such fence shall be erected within thirty feet of a street intersection. Wire fence and other fences in which the open-

ings between the materials of which the fence is constructed represent more than seventy percent of the total fence area may be erected to a height of six feet, except within thirty feet of a street intersection. In no case shall a fence be erected to a height exceeding forty-two inches in a front yard.

Davenport, Iowa, Ordinances, ch. 42, art. XXII, § 42–99(2)(c) (1973).

To resolve this constitutional claim, we must consider three questions: (1) whether the vagueness issue was properly presented in district court; (2) whether the proper degree of certainty in the ordinance was required by the district court; and (3) whether the ordinance is unconstitutionally vague under the required degree of certainty.

■■■ Was the issue properly raised? The city contends that the constitutional challenge to the ordinance was first raised in district court and was too late. The board, however, has power only to make "special exceptions to the terms of the ordinances." Iowa Code § 414.7. The city council "provides for the manner in which such regulations and restrictions and boundaries of such districts shall be determined, established, and enforced, and from time to time amended, supplemented, or changed." Iowa Code § 414.4. The board, therefore, merely has authority to determine whether exceptions to an ordinance are to be allowed. It cannot amend or change an ordinance or declare an ordinance unconstitutional. For its proceedings, constitutionality is presumed. The issue of constitutionality is not properly raised until the proceeding reaches district court. *See* 82 Am.Jur.2d *Zoning and Planning* § 336 (1976). We thus reject this contention of the city.

How certain must an ordinance be? Greenawalt contends in his brief: "Because of the important rights [free use of property] which are affected by this ordinance, the relatively less important purpose underlying the ordinance and the significant hardship and deprivation which would re-

sult from the City's intended application of this ordinance to the Petitioner, the applicable standard of review must be significantly higher than that which was imposed by the trial court."

 Before reaching the substance of this claim, we note that Greenawalt erroneously concluded the purpose of the zoning ordinance is "relatively less important" than his right to free use of property. Zoning ordinances are enacted "[f]or the purpose of promoting the health, safety, morals, or the general welfare of the community...." Iowa Code § 414.2. Such ordinances, by their very nature, infringe upon the free use of property. Yet they constitute a valid exercise of the police power. *Plaza Recreational Center v. Sioux City*, 253 Iowa 246, 111 N.W.2d 758 (1961).

 Regarding the claim itself, Greenawalt correctly points out that we require various degrees of certainty in statutes and ordinances when they are attacked on vagueness grounds. The basic distinction is between penal and civil enactments. *In Interest of Wall*, 295 N.W.2d 455, 457–58 (Iowa 1980); *MRM, Inc. v. City of Davenport*, 290 N.W.2d 338, 344 (Iowa 1980); *Knight v. District Court*, 269 N.W.2d 430, 432 (Iowa 1978). This case involves a civil and not a penal application of an ordinance. The standard we apply in determining whether civil enactments are unconstitutionally vague is this: "A civil statute is unconstitutionally vague under the due process clause of the fourteenth amendment to the United States Constitution when its language does not convey a sufficiently definite warning of proscribed conduct, when measured by common understanding or practice. Thus, when persons must necessarily guess at the meaning of a statute and its applicability, the statute is unconstitutionally vague." *Incorporated City of Denison v. Clabaugh*, 306 N.W.2d 748, 751 (Iowa 1981) (citations omitted). We have also stated: "A statute is said to be vague in the constitutional sense when it forbids or requires the doing of an act in terms so uncertain that men of common

intelligence must necessarily guess at its meaning and differ as to its application." *Wright v. Town of Huxley*, 249 N.W.2d 672, 676 (Iowa 1977). In the application of this test Greenawalt confronts the rule that "[a] presumption of constitutionality exists which must be overcome by negating every reasonable basis on which the ordinance can be sustained." *Clabaugh*, 306 N.W.2d at 751.

 Is section 42–99(2)(c) unconstitutionally vague? Bearing in mind that zoning restrictions must be strictly construed in favor of the free use of property, *Linn County v. City of Hiawatha*, 311 N.W.2d 95, 100 (Iowa 1981); *Business Ventures, Inc. v. Iowa City*, 234 N.W.2d 376, 381 (Iowa 1975); *Jersild v. Sarcone*, 260 Iowa 288, 296, 149 N.W.2d 179, 185 (1967), and that judicial extension of restrictions by implication and interpretation is not permissible, *Johnson v. Board of Adjustment*, 239 N.W.2d 873, 881 (Iowa 1976), we turn to section 42–99(2)(c) itself.

That section, which we have previously quoted, consists of three sentences. The third sentence limits the height of front yard fences to forty-two inches. Greenawalt does not assert that this sentence, read alone, is vague. He claims that when the three sentences are read together a person of ordinary intelligence must guess at their meaning. This is because, he argues, the first two sentences necessarily lead to the conclusion that fences of five feet and six feet are allowed in front yards under certain conditions. The third sentence then "sudden[ly]" and "unequivocal[ly]" contradicts the first two sentences by limiting front-yard fences to forty-two inches.

We do not agree. By giving the words of paragraph (2)(c) their common and generally accepted meanings, a reasonable reading of the first two sentences leads to the conclusion that fences are limited to specified heights on the boundary lines of properties. The third sentence then imposes a special limitation on the height of front-yard fences.

Greenawalt contends that this interpretation is not reasonable because paragraph (2)(c) appears under the heading "Front yards". Little weight, however, is to be given to headings. The Davenport city code provides that

[t]he catchlines of the several sections of this Code printed in boldface type, titles, headings, chapter heads, section and subsection heads or titles, historical references, cross references, and state law references, unless set out in the body of the section itself, contained in this Code, do not indicate, explain, supplement or clarify the contents of the section.

Davenport, Iowa, Ordinances, ch. 1, § 1–9 (1973). *See Lonzetta v. Township of Hazle*, 30 Pa.Commw. 503, 506, 374 A.2d 743, 745 (1977). We do not sustain Greenawalt's contention of unconstitutional vagueness.

IV. *Greenawalt's other claims.* Greenawalt presents two additional arguments.

A. Estoppel. On three occasions Greenawalt went to the Davenport building department to explain that he intended to enclose his property with a six-foot fence and to inquire whether such a fence was legal. Each time he claims he was told that the planned fence was legal and that he did not need a building permit. Now that he has spent a considerable sum in reliance upon the information he received from the city, he asserts the city cannot enforce the height limitation against him.

We confronted an analogous situation in *B. & H. Investments v. City of Coralville*, 209 N.W.2d 115 (Iowa 1973). In that case we distinguished building permits legally issued by a city and those not legally issued. We held that a permit not legally granted was revocable at will, even though a permittee had expended considerable funds. We said: "If the [city] council could issue an invalid license and the licensee could make it valid by expending funds, the statutory purpose *of protecting other interested individuals* would be thwarted." *Id.* at 119 (emphasis added). The reasoning of *B. & H. Investment* has even greater impact here where the applicant

for a variance did not rely on a permit but on alleged incorrect statements of a city employee. We do not find merit in this argument.

B. Selective enforcement. Greenawalt bases an argument of selective enforcement in violation of the United States and Iowa Constitutions on two grounds: (1) as section 42–99(2)(c) is ambiguous it is subject to incongruent applications; and (2) as the city does not require building permits for the construction of fences, the only methods by which it can discover violations are by chance if a building permit is sought or a neighbor complains.

Neither ground is valid. The first requires a finding that section 42–99(2)(c) is ambiguous, a claim we have rejected. The second ground fails because mere laxity in enforcement or some exercise of selective enforcement does not in itself establish a constitutional violation. *State v. Larson Transfer & Storage, Inc.*, 310 Minn. 295, 246 N.W.2d 176 (1976); *Provo City v. Hansen*, 585 P.2d 461 (Utah 1978); *State v. Board of Appeals*, 21 Wis.2d 516, 544, 124 N.W.2d 809, 823 (1963) (quoting *Snowden v. Hughes*, 321 U.S. 1, 8, 64 S.Ct. 397, 401, 88 L.Ed. 497, 503 (1943): " '[U]nequal application [of a statute] to those who are entitled to be treated alike, is not a denial of equal protection unless there is shown to be present in it an element of intentional or purposeful discrimination.' ").

V. *What fences are permissible?* We come finally to the question of the respective locations at which the six-foot fence in question is permitted or prohibited. This requires construction of the ordinance as it applies to Greenawalt's irregularly shaped lot.

We first construe section 42–99(2)(c), previously quoted, relating to fences. That section divides fences into two classes: those having less than seventy percent open space, and those having more than seventy percent open space. Fences of the first kind may be constructed along lot boundaries to a height of five feet. Fences of the second kind may be constructed to a

height of six feet. But neither class may be construed within thirty feet of a street intersection, or higher than forty-two inches in a front yard.

Greenawalt's fence, both the wrought iron and the chain link parts, is of the second class; it is more than seventy percent open. This opinion relates only to that class of fence. With no restrictions added, therefore, Greenawalt could construct the fence to a height of six feet along his lot boundaries. But two restrictions do in fact exist. First, at one point beside the lot two streets intersect, McClellan Boulevard and Wood Lane. No fence at all can be constructed within thirty feet of that intersection.

Second, the forty-two inch restriction relative to front yards also comes into play. We must thus ascertain the location of the front yard or yards of the Greenawalt property.

Section 42–2(54) of the ordinance defines a front yard thus:

YARD, FRONT. A yard extending across the front of the lot between the side lot lines and being the minimum horizontal distance between the street line and the main building or any projection thereof other than the projection of the usual steps or unenclosed entranceway.

In the case of a lot which runs through to another street, section 42–99(2)(b) ordains:

On lots having double frontage, the required front yard shall be provided on both streets.

Rear lots and side lots are defined in sections 42–2(55) and 42–2(56) respectively:

YARD, REAR. A yard extending across the rear of a lot, measured between the side lot lines, and being the minimum distance between the rear lot line and the rear of the main building or any projection other than steps, unenclosed balconies or unenclosed porches. On corner lots, the rear yard shall be considered as parallel to the street upon which the lot has its least dimension.

YARD, SIDE. A yard between the main building or any projection other than steps and the side lot lines, and extending from the front yard line to the rear lot line.

Greenawalt's irregular lot falls within section 42–99(2)(b) (double frontage); it runs to streets at both ends—McClellan Boulevard and Wood Lane at one end, and East River Drive at the other. The part running from the house to McClellan Boulevard and Wood Lane is front yard and the part running from the other side of the house to East River Drive is also front yard. Reading sections 42–99(2)(b) (double frontage) and 42–2(55) (rear yard) together, the part of a lot which runs to a street is front yard, and the part which does not run to a street is rear yard. The Greenawalt property thus had two front yards but no rear yard.

The property does, however, have two side yards. Under section 42–2(56), the part of a lot between the front and rear lot lines is side yard. As we have no rear lot line here, the side yards must be the area between the two front yard lines ending at opposite sides of the house.

On the Greenawalt property a fence higher than forty-two inches may not be constructed along the sides and ends of the two front yards shown by interlining on the accompanying sketch. A fence higher than six feet may not be constructed along the sides of the two side yards shown as the open area on the sketch. As we have stated, no fence may be constructed within thirty feet of the intersection of McClellan Boulevard and Wood Lane. The term "fence" in this opinion includes gates, but the two existing pillars at the entrance of the driveway are not disturbed by this opinion; they are "grandfathered in."

As thus modified, we uphold the judgment, and we return the case to district court for proceedings for removal of the fence where it conflicts with this construction of the ordinance.

MODIFIED, AFFIRMED, AND REMANDED.