**CITY of WAPELLO, Appellant,**

v.

**John CHAPLIN and Anna Mae Chaplin, d/b/a C & H Auto Wrecker & Towing Service, Appellees.**

No. 92–555.

Court of Appeals of Iowa.

Sept. 2, 1993.

Roger A. Huddle of Conway & Huddle, Wapello, for appellant.

William L. Matthews of Hicklin & Matthews, Wapello, for appellees.

Considered by DONIELSON, P.J., and HAYDEN and HABHAB, JJ.

HABHAB, Judge.

The City of Wapello filed a petition in equity seeking to enjoin John and Anna Mae Chaplin from operating a wrecking and towing service out of their residence. The City alleged that the Chaplins' business was a nonconforming use in a residential zone and did not fall within any exception to the zoning ordinance. The Chaplins argued that the City was selectively enforcing its ordinance, by proceeding against the Chaplins but allowing others to operate similarly nonconforming businesses without objection.

The case proceeded to a bench trial, and on February 10, 1992, the district court entered its findings of fact and conclusions of law. The district court found that the Chaplins' operation of their business out of their home violated the City's zoning ordinance. However, the court also found that the City had not enforced the zoning ordinance against a number of other residential businesses. The court therefore ruled that enjoining the defendants' business would be discriminatory and unlawful and dismissed the City's petition.

The City appeals. The City contends the Chaplins wholly failed to present substantive evidence concerning other residential businesses within the city. The City therefore contends that the district court erred in refusing to enter the injunction. We agree.

 I. In this equity action, our review is de novo. Iowa R.App.P. 4. We have a duty to examine the entire record and adjudicate anew rights on the issues properly presented. *In re Marriage of Steenhoek*, 305 N.W.2d 448, 452 (Iowa 1981). Although we give weight to the fact findings of the district court, especially when considering the credibility of witnesses, we are not bound by them. Iowa R.App.P. 14(f)(7).

 II. At the outset we note that the evidence unequivocally established that the Chaplins were operating their business in violation of the zoning ordinance. They listed their home phone number as the business's phone number and their home address as the business's address in their advertisements, invoices, and tax documents. They kept the business's tow truck at their home, either on their driveway or in their garage, which they enlarged specifically to accommodate the oversized truck. The truck itself bore the business's name and showed the Chaplins' home phone number and address on its doors. The Chaplins received customers at their home and kept all of their business records there.

We thus see no reason to disturb the district court's finding that the Chaplins' business violates the City zoning ordinance.

 III. The only remaining issue is whether the Chaplins presented sufficient evidence of selective and discriminatory enforcement of the zoning ordinance. We think it is clear that they did not.

The sole testimony regarding other nonconforming uses was presented during the Chaplins' cross-examination of Mayor Loren J. Thompson. The mayor testified that the City had received complaints about the Chaplins' business, both from neighbors and from "other people that the City had stopped from running businesses that were questioning why we should let one run ... when they were stopped." Acting on these complaints, the city attorney sent the Chaplins a letter advising them that they were in violation of the zoning ordinance.

On cross-examination, the Chaplins' attorney asked the mayor the following questions:

Q: Aren't there as a matter of fact many small businesses operating in the City of Wapello out of people's residence property? A: I would suppose you're right, yes, sir.

Q: In fact, there is dozens of them; is there not? A: I can't answer that, sir.

The Chaplins' attorney proceeded to question the mayor about a list of alleged nonconforming businesses. The mayor denied knowledge of all but four businesses. The following exchanges are illustrative:

Q: Does Mr. Keith Street operate an income tax service in an R–2 district? A: I don't know, sir.

Q: In fact, right across the street from the courthouse; isn't that correct? A: That's where he lives, yes, sir.

Q: But you don't know whether he has a tax service he operates out of his home? A: No, sir. I don't do my taxes there.

Q: Does Mr. Bill Wilson operate a tax service out of his mother's home in an R–2 district? A: Yes, he does, sir, but that was grandfathered in before zoning started.

. . . . .

Q: Is Mr. Ed Weeks operating a business of buying, refurbishing and selling antiques out of his home? A: I don't know.

Q: You don't know that he's in an antique business? A: I know his wife sells antiques at shows, but I don't know what he does at home.

. . . . .

Q: Do you know that a Mr. Dan Kaufman operates a lawnmower sales and repair service out of his home in an R–2 district? A: No, sir.

Q: Do you know that a Mr. Carl Carlson operates a sewing machine repair business out of his home in an R–1 district? A: No, sir.

Q: Do you know that the following persons all operate carpenter businesses out of their homes, and they are all in R–2 districts. . . . They are all self-employed carpenters; are they not? A: I think all but Jim Brown is, yes, sir.

Q: And none of them have any central location or carpenter shop anywhere else to your knowledge; do they? A: I don't know, sir.

Q: When you want to call them up for business, they list their home telephone numbers as the numbers to call; isn't that correct? A: I don't know.

This recitation of alleged violations and denial of any knowledge falls far short of proof that "dozens" of violations exist. In fact, the mayor testified that he knew of only four businesses besides the Chaplins' that were operating in residential areas. Of these, one was "grandfathered in" as a valid nonconforming use and one had been sent a "cease and desist" letter. The third the mayor believed was an authorized use under the ordinance, though he admitted he could not point to the specific ordinance provision he had in mind.

The Chaplins did not present any other evidence to support their claim of selective enforcement. Mr. Chaplin testified simply that he knew most of the people about whom the mayor had been questioned and that "some of these people have been in business longer" than him. He was not asked, nor did he claim to know, whether specific people conducted business out of their homes.

In contrast, the mayor testified that the City consistently enforces its zoning requirements against reported violations and that "letters go out quite frequently to people who are operating businesses and ask them to cease and desist, or they will go to court."

■ Further, even if the Chaplins had produced sufficient evidence that the City had enforced the ordinance in one instance but failed to take action against other violators in other instances, this would not in itself establish a constitutional violation. In *State ex rel. Cities Serv. Oil Co. v. Board of Appeals,* 21 Wis.2d 516, 124 N.W.2d 809, 823 (1963), the issue was whether the revocation of a building permit constituted a discriminatory enforcement of the zoning ordinance so as to violate the constitutional right of the permit applicant. The Wisconsin Supreme Court found no violation of constitutional rights. *Id.* That court stated:

Even if there had been evidence that the city itself had enforced the ordinance in one instance and not in others, this would not in itself establish a violation of the equal-protection-of-the-laws clause of the Fourteenth amendment. This was pointed out by Mr. Chief Justice Stone in *Snowden v. Hughes,* 321 U.S. 1, 8–9, 64 S.Ct. 397, 401, 88 L.Ed. 497 (1943), wherein he declared:

"The unlawful administration by state officers of a state statute fair on its face, resulting in its unequal application to those who are entitled to be treated alike, is not a denial of equal protection

unless there is shown to be present in it an element of intentional or purposeful discrimination...."

*Cities Serv. Oil Co.,* 124 N.W.2d at 823.

The Iowa Supreme Court quoted this Wisconsin case in *Greenawalt v. Zoning Board of Adjustment,* 345 N.W.2d 537, 546 (Iowa 1984). Greenawalt sought a variance to build a fence higher than forty-two inches. *Id.* at 541. The zoning board denied the variance. *Id.* Greenawalt argues, inter alia, selective enforcement. *Id.* at 546. The Iowa Supreme Court held the

> mere laxity in enforcement or some exercise of selective enforcement does not in itself establish a constitutional violation. *State v. Larson Transfer & Storage, Inc.,* 310 Minn. 295, 246 N.W.2d 176 (1976); *Provo City v. Hansen,* 585 P.2d 461 (Utah 1978); *State v. Board of Appeals,* 21 Wis.2d 516, 544, 124 N.W.2d 809, 823 (1963) (quoting *Snowden v. Hughes,* 321 U.S. 1, 8, 64 S.Ct. 397, 401, 88 L.Ed. 497, 503 (1943): " '[U]nequal application [of a statute] to those who are entitled to be treated alike, is not a denial of equal protection unless there is shown to be present in it an element of intentional or purposeful discrimination.' ").

*Greenawalt,* 345 N.W.2d at 546.

Based on this record, we conclude the Chaplins failed to establish their defense of selective enforcement. The district court's contrary conclusion must therefore be reversed and the case remanded for further proceedings not inconsistent with this opinion.

**REVERSED AND REMANDED.**