# IN THE SUPREME COURT OF IOWA

No. 19–1672

Submitted January 20, 2021—Filed February 26, 2021


**MARY SUE EARLEY** and **BANKERS TRUST COMPANY,** as Trustees of the **MARY SUE EARLEY REVOCABLE TRUST DATED SEPTEMBER 26, 1994,**

Appellants,

vs.

**BOARD OF ADJUSTMENT OF CERRO GORDO COUNTY, IOWA,**

Appellee,

**GREGORY A. SAUL** and **LEA ANN SAUL,**

Intervenor–Appellees.

---

On review from the Iowa Court of Appeals.


Appeal from the Iowa District Court for Cerro Gordo County, Rustin T. Davenport, Judge.


Appellants contend local board of adjustment acted illegally in approving variance for residential improvement completed in violation of setback ordinance. **DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT REVERSED AND REMANDED WITH DIRECTIONS.**


McDonald, J., delivered the opinion of the court, in which all participating justices joined. McDermott, J., took no part in the consideration or decision of the case.

Scott D. Brown and Travis M. Armbrust (until withdrawal) of Brown, Kinsey, Funkhouser & Lander, P.L.C., Mason City; and Ryan G. Koopmans (argued) of Belin McCormick, P.C., Des Moines, for appellants.

Mark S. Rolinger and Adam J. Babinat (argued) of Redfern, Mason, Larsen & Moore, P.L.C., Cedar Falls, for appellees Gregory A. Saul and Lea Ann Saul.

Randall E. Nielsen of Pappajohn, Shriver, Eide & Nielsen, P.C., Mason City, for appellee Board of Adjustment of Cerro Gordo County, Iowa.

**McDONALD, Justice.**

The issue in this appeal is whether a board of adjustment illegally granted an area variance that allowed residential property owners to construct the below-depicted pergola twenty-one inches from the property line in violation of an ordinance requiring a six-foot setback. The district court answered the question in the negative, and the court of appeals affirmed, concluding a lesser showing is required for granting an area variance versus a use variance. We disagree and vacate the decision of the court of appeals and reverse the judgment of the district court.



I.

Gregory and Lea Ann Saul own the property at issue. The Sauls' property is on Clear Lake within an unincorporated area of Cerro Gordo County and is subject to county zoning ordinances. The property is within an area zoned R-3, single family residential district. Pursuant to county ordinance, properties within this district must have a side yard with a six-foot setback clear of any structures. *See* Cerro Gordo County, Iowa, Zoning Ordinance 15 art. 11.6 (Mar. 13, 1990). Unaware of the setback

requirement, the Sauls hired a contractor to build the pergola at issue. The pergola extends from the side of the Sauls' house and covers a patio. The pergola and patio are twenty-one inches from the property line. After the pergola was built, the local planning and zoning administrator informed the Sauls the pergola violated county ordinance. The Sauls then applied for a permit, which the administrator denied due to the setback violation.

The Sauls filed an application for a variance from the local ordinance. In the application form, the Sauls were asked what they proposed for the property affected. They explained they wanted a pergola. They explained the pergola "was already installed without a permit by mistake and [they] would like to retain it." They further explained they were "ignorant of the permit requirement which is no excuse." They concluded they "would prefer not to tear it all out."

The Sauls' application was accompanied by a variance criteria supplemental information form. The form provided as follows:

> The Applicant shall be held responsible to provide adequate evidence that the literal enforcement of the Ordinance will result in unnecessary hardship. "Hardship" as used in connection with the granting of a variance means the property in question cannot be put to a reasonable use if used under the conditions allowed by the provisions of the Ordinance, the plight of the landowner is due to circumstances unique to his property not created by the landowner; and the variance, if granted, will not alter the essential character of the locality.

The form contained questions seeking evidence of unnecessary hardship. Question 1 asked the Sauls to identify the reasons the property cannot yield a reasonable use. The Sauls did not answer the question. Question 2 asked the Sauls what is unique about the property compared to other properties in the vicinity. The Sauls responded, "None." When asked how the variance would fit with the character of the area, the Sauls explained

the pergola "is a great use of space and shades the front from the hot summer sun which saves energy."

At the public hearing on the Sauls' application for a variance, the board heard from the planning and zoning administrator and the Sauls' contractor. Neither provided much information to the board on the issue of unnecessary hardship. The contractor explained he built the pergola in the same footprint as the patio. The patio was built with walls to hold the posts for the pergola. Members of the board noted there was no walking room between the patio and the neighboring fence because the patio was already close to the fence. The administrator stated he had not heard any neighbors complain about the pergola. Two of the board members stated the pergola is "nice." Based on this information, the board unanimously approved the variance and waived the penalty for building the pergola without a permit.

The owner of the neighboring property, the Mary Sue Earley Revocable Trust, filed a petition for writ of certiorari in the district court challenging the legality of the board's action. The district court concluded the board acted legally in granting the variance, and the court of appeals affirmed the district court. We granted the trustees' application for further review.

II.

Our review is for the correction of legal error. *See Vogelaar v. Polk Cnty. Zoning Bd. of Adjustment*, 188 N.W.2d 860, 863 (Iowa 1971); *Deardorf v. Bd. of Adjustment of Plan. & Zoning Comm'n*, 254 Iowa 380, 383–84, 118 N.W.2d 78, 80 (1962).

A.

Zoning law is governed by state statute and local ordinance. Iowa Code section 335.3(1) (2019) vests county boards of supervisors with the

power to create local zoning ordinances "with reference to land and structures located within the county but lying outside of the corporate limits of any city." Iowa Code section 335.15(3) (2019) gives boards of adjustment power to grant an individual "variance from the terms of the ordinance as will not be contrary to the public interest, where owing to special conditions a literal enforcement of the provisions of the ordinance will result in unnecessary hardship, and so that the spirit of the ordinance shall be observed and substantial justice done."

A board's statutory authority to grant a variance is limited. "It is fundamental that the board may not legislate. It exercises only administrative and quasi-judicial power strictly within the limitations" of the statute. *Deardorf*, 254 Iowa at 389; 118 N.W.2d at 83. Variances should be granted "sparingly and with great caution or in exceptional instances only." *Id.* at 390, 118 N.W.2d at 83. "The board cannot amend or set aside the zoning ordinance under the guise of a variance." *Id.* at 389, 118 N.W.2d at 83. "If an applicant does not make the required unnecessary hardship showing, granting a variance is an 'illegal' act by the board . . . ." *Graziano v. Bd. of Adjustment*, 323 N.W.2d 233, 237 (Iowa 1982); *see also Deardorf*, 254 Iowa at 385, 118 N.W.2d at 81 ("Certainly, however, if there was no showing before the board of the requisite unnecessary hardship to the owners if a variance were denied, its order is illegal within the meaning of [the] Code . . . .").

We first gave content to the unnecessary-hardship standard in *Deardorf v. Board of Adjustment*. 254 Iowa at 386, 118 N.W.2d at 81 ("No Iowa decision defining the term 'unnecessary hardship' has come to our attention.").[1] In that case, we canvassed treatises and persuasive

---

[1]*Deardorf* involved a challenge to a variance from a city zoning ordinance under Iowa Code section 414.12. 254 Iowa at 384, 118 N.W.2d at 80. Iowa Code section 414.12

authorities and explained the justification necessary to grant a variance was significant. *Id.* at 386–89, 118 N.W.2d at 81–83. The restriction must be "so unreasonable as to constitute an arbitrary and capricious interference with the basic right of private property . . . or that there are factors sufficient to constitute such a hardship that would in effect deprive the owner of his property without compensation." *Id.* at 387, 118 N.W.2d at 82 (quoting *Peterson v. Vasak,* 76 N.W.2d 420, 426 (Neb. 1956)). Relying on a persuasive decision from New York, we adopted a three-part test to establish unnecessary hardship. *Id.* at 386, 118 N.W.2d at 81 (citing *Otto v. Steinhilber,* 282 N.Y. 71, 24 N.E.2d 851, 853 (1939)). The landowner must show: "(1) the land in question cannot yield a reasonable return if used only for a purpose allowed in that zone; (2) the plight of the owner is due to unique circumstances and not to the general conditions in the neighborhood . . . ; and (3) the use to be authorized by the variance will not alter the essential character of the locality." *Id.*

In applying the three-part standard to the facts of the case, we concluded the board of adjustment acted illegally in granting a variance. *Id.* at 388–90, 118 N.W.2d at 82–84. In that case, the local zoning ordinance restricted the maximum height of buildings within a residential multifamily district. *Id.* at 382, 118 N.W.2d at 79. The property owners obtained a variance to exceed the height restriction for the purpose of constructing a seven-story apartment building. *Id.* at 383, 118 N.W.2d at 79–80. In support of the variance, the board noted a "nice apartment house" was needed in the city, the new building would yield greater property taxes, and the proposed building was not unreasonable or contrary to the public interest. *Id.* at 388–89, 118 N.W.2d at 82–83. We

---

applies to city zoning while section 335.15 applies to county zoning. The statutes are identical in all material respects.

concluded these considerations were insufficient to establish "unnecessary hardship, within any of the well recognized definitions of the term." *Id.* at 388, 118 N.W.2d at 82. "Since the board's order was made without any substantial showing of the requisite unnecessary hardship to the applicants for the variance it was illegal and must be annulled." *Id.* at 390, 118 N.W.2d at 84.

The *Deardorf* standard has been the controlling standard for almost sixty years. This court has repeatedly applied the *Deardorf* standard. *See Greenawalt v. Zoning Bd. of Adjustment*, 345 N.W.2d 537, 541–42 (Iowa 1984); *Graziano*, 323 N.W.2d at 236–37; *Bd. of Adjustment v. Ruble*, 193 N.W.2d 497, 502–03 (Iowa 1972). In addition, local jurisdictions, relying on our precedents, have enacted ordinances that mirror the *Deardorf* standard. *See, e.g.*, *Graziano*, 323 N.W.2d at 235–36 (noting the city ordinance adopted the *Deardorf* standard). Cerro Gordo County is one such jurisdiction. Its ordinance provides, as a matter of local law, the board shall not grant a variance unless all of the following have been established:

> a. The land in question cannot yield a reasonable return if used only for a purpose allowed in that zone.
>
> b. The plight of the owner is due to the unique circumstances and not to the general conditions in the neighborhood, which may reflect the unreasonableness of the zoning ordinance itself.
>
> c. The use to be authorized by the variance will not alter the essential character of the locality.

Cerro Gordo County, Iowa, Zoning Ordinance 15 art. 24.4(A)(3).

Contrary to our precedents and the text of the local ordinance, the court of appeals held the *Deardorf* standard applies differently in this case. At the Sauls' urging, the court of appeals, relying on a footnote in *City of Johnston v. Christenson*, 718 N.W.2d 290, 299 n.4 (Iowa 2006), concluded

that "a less onerous burden is required to justify an area variance than a use variance." Without specifically identifying the elements of the less onerous burden, the court of appeals held there was substantial evidence supporting the board's decision.

The court of appeals misstated the controlling law and erred in holding the Sauls were required to make a lesser showing. *Christenson* explained the difference between a use variance and an area variance. *Christenson*, 718 N.W.2d at 299 n.4. "A use variance permits a use of land for purposes other than those prescribed by the zoning ordinance, and is based on the standard of unnecessary hardship." *Id.* Whereas, "[a]n area variance does not involve a use prohibited by an ordinance, but concerns a deviation from specific requirements such as height limitations, setback lines, size regulations, and the like." *Id.* *Christenson* also explained there was a justification for requiring a slightly lesser showing to establish an area variance. *See id.* ("An 'area variance' is normally unrelated to a change in use and traditionally justifies a slightly lesser showing than required to justify a 'use variance.' "). *Christenson* noted other courts had adopted the distinction, but *Christenson* did not adopt the distinction. *See id.* Twelve years after the *Christenson* decision, in an excellent piece regarding use and area variances, the former dean of the Iowa College of Law recognized the *Deardorf* standard still applies in Iowa with equal force to use and area variances. *See* N. Williams Hines, *Difficulties Standard for Area Variances*, 102 Iowa L. Rev. Online 365, 366 (2018) [hereinafter Hines] ("Notwithstanding the distinctively different purposes served by these two types of zoning variances, two-thirds of U.S. states, *including Iowa*, apply the *same* strict requirements for granting them both." (emphasis added)). That was a correct statement of the law.

To the extent the Sauls argue this court should change our jurisprudence in this area and now adopt a lesser showing for granting area variances, we decline to do so. In declining to do so, we acknowledge there are legitimate reasons supporting a distinction between use and area variances. *See generally* Hines, 102 Iowa L. Rev. Online at 365 (articulating reasons and arguing for a less onerous standard for area variances). However, the distinction pressed by the Sauls is not a new one. We have noted the distinction between use and area variances in prior decisions and have explicitly declined to adopt different standards for one versus the other. *See Graziano,* 323 N.W.2d at 236 (rejecting that argument there is a different standard for area variances as "unconvincing" because the statute "requires a showing of unnecessary hardship for either use or area variances"); *Ruble,* 193 N.W.2d at 505 (rejecting that argument *Deardorf* should be applied only to use variances and stating that "*Deardorf* applied the test to a situation involving both use and area zoning restrictions").

Stare decisis counsels in favor of rejecting the Sauls' proposed distinction between area and use variances. The doctrine of stare decisis holds that courts should defer to precedent. Among other things, stare decisis advances stability and consistency in the law. It increases efficiency in the decision-making process. *See* Benjamin N. Cardozo, *The Nature of the Judicial Process* 145 (Dover Publ'ns 2005) (1921) ("[T]he labor of judges would be increased almost to the breaking point if every past decision could be reopened in every case, and one could not lay one's own course of bricks on the secure foundation of the courses laid by others who had gone before him."). And it advances the rule of law and concomitantly promotes respect for the judiciary as a neutral decision-maker.

The command of stare decisis is particularly compelling here. The standard for granting a variance is set by statute. *See* Iowa Code §§ 335.15(3), 414.12(3). *Deardorf* and its progeny are thus cases of statutory interpretation. "[W]e presume the legislature is aware of our cases that interpret its statutes. When many years pass following such a case without a legislative response, we assume the legislature has acquiesced in our interpretation." *Doe v. New London Cmty. Sch. Dist.*, 848 N.W.2d 347, 355 (Iowa 2014) (quoting *Ackelson v. Manley Toy Direct, L.L.C.*, 832 N.W.2d 678, 688 (Iowa 2013)). After almost sixty years, "we think our legislature would be quite surprised to learn if we decided to reverse course and take a different position under the guise of statutory interpretation." *Id.* (quoting *Ackelson*, 832 N.W.2d at 688).

Given our string of unbroken precedents over the last sixty years, legislative reliance on those precedents, and local reliance on those precedents, we decline to adopt a different standard for area variances now. Any change in this area of law at this point is best undertaken by the legislative department. *See* Hines, 102 Iowa L. Rev. Online at 383 ("In thinking about how best to reform Iowa's 'unnecessary hardship' requirement for area variances . . . I have concluded that legislative reform is the best option.").

B.

Having concluded *Deardorf* is the controlling standard, we address the question of whether the *Deardorf* standard was met in this case. The burden is upon the party seeking the variance to show unnecessary hardship would result if the variance were denied. *Graziano*, 323 N.W.2d at 237; *Ruble*, 193 N.W.2d 497 at 502. The *Deardorf* standard is in the conjunctive. If the party seeking the variance fails to establish any of the three elements, the board is without statutory authority to grant the

variance.  *See Greenawalt*, 345 N.W.2d at 542 (explaining "[t]he burden is on the applicant to show all three of the elements" and "[a] failure to demonstrate one of them requires the board to deny the application"); *Graziano*, 323 N.W.2d at 236 (stating *Deardorf* "holds all requirements must be shown").

Under *Deardorf*, the Sauls were first required to establish the property cannot yield a reasonable return without the grant of a variance approving their pergola.  This is a significant burden.

> [A] variance should be granted where, and only where, the application of the regulation in question to particular property greatly decreases or practically destroys its value for any permitted use, or where such application bears so little relationship to the purposes of zoning that, as to the property in question, the regulation is in effect confiscatory, arbitrary, or capricious, or constitutes an unnecessary, unwarranted, or unjust invasion of, or interference with, a fundamental right of property.

*Deardorf*, 254 Iowa at 387–88, 118 N.W.2d at 82 (quoting 101 C.J.S. Zoning § 290).

The Sauls failed to meet this significant burden.  On the supplemental information form, the Sauls were asked to identify the reasons why the "land in question cannot yield a reasonable use."  They left the question blank.  They failed to supplement the written application with any evidence bearing on the question presented.  They did not participate in the hearing.  Their contractor did participate at the hearing.  However, the contractor did not provide any information or evidence about the financial consequences of denying the variance.  The only evidence in this record relevant to the question of reasonable return goes against the Sauls.  The planning and zoning administrator submitted a letter to the board stating, "There is an existing reasonable use of the property.  The Zoning Ordinance is not causing a hardship by limiting the pergola."  A

variance cannot be granted where there was "no evidence relating to the reasonableness of the return." *Graziano*, 323 N.W.2d at 237 (emphasis omitted).

In their application, the Sauls noted several advantages they would gain in having a pergola. The Sauls noted the pergola is decorative, is aesthetically pleasing, and provides shade for greater use and enjoyment of the patio. Even if true, these considerations are immaterial. The legal standard is not that the property could be improved or "more profit could be made if a variance is granted. The standard is that a reasonable return could not be garnered from a permitted use." *Graziano*, 323 N.W.2d at 237; *see also Greenawalt*, 345 N.W.2d at 542 ("Lack of a reasonable return may be shown by proof that the owner has been deprived of *all* beneficial use of his land." (quoting 3 Robert M. Anderson, *American Law of Zoning* § 18.17, at 179–83 (1968))). "The most that may fairly be claimed for [the Sauls'] considerations which moved the board to act is that they may indicate its action was not 'contrary to the public interest,'" but that is insufficient to establish unnecessary hardship. *Deardorf*, 254 Iowa at 389, 118 N.W.2d at 83.

The Sauls also claim the denial of the variance would infringe their right to peaceful enjoyment of their residential property. We need not resolve the question of whether the absence of a pergola would infringe their right to peaceful enjoyment. Even if the denial of the variance would infringe the Sauls' right to peaceful enjoyment, that "would not justify the imposition of a different legal standard." *Greenawalt*, 345 N.W.2d at 543. "[T]he infringement of peaceful enjoyment must equal a denial of all beneficial use." *Id.* Here, there was no evidence that compliance with the ordinance would deny the Sauls all beneficial use of their property or would deny them a reasonable return on their property.

Although the Sauls' failure to establish they would be denied a reasonable return on the property requires the board's action be reversed, we also note the Sauls failed to establish the "plight of the owner is due to unique circumstances and not to the general conditions in the neighborhood." *Deardorf*, 254 Iowa at 386, 118 N.W.2d at 81. The Sauls wanted shade for their patio. Their desire to shade part of their property is not a unique circumstance distinct from general conditions in the neighborhood. *Cf. Greenawalt*, 345 N.W.2d at 543–44 (holding high incidence of vandalism in the neighborhood did not establish circumstances unique to the homeowner's property). The Sauls admitted this in their application. In the supplemental information form, the Sauls wrote "None" in response to a question asking about unique circumstances. At the hearing on their application, the Sauls did not provide any additional information regarding this point.

The Sauls argue the variance should nonetheless be granted because the patio was already built, the pergola has already been built, and they were unaware of the local ordinance prior to completing construction. Essentially, the Sauls argue their good-faith completion of the noncompliant improvement favors granting the variance. We disagree. We have repeatedly rejected these type of equitable considerations as immaterial to the statutory grounds authorizing a variance.

For example, in *Board of Adjustment v. Ruble*, a property developer started construction of a home in violation of lot requirements and obtained a variance. *See* 193 N.W.2d at 499–500. The district court reversed the decision of the board and directed the board to enter an order denying the variance. *Id.* at 499. We affirmed the judgment of the district court. *Id.* at 509. We held it was immaterial that the applicant had started construction on the home and "acted in good faith and without knowledge

of the zoning requirement." *Id.* at 505. We favorably quoted the district court, which explained that to hold otherwise would mean the zoning ordinance "applies only to those persons who are conscientious enough to adequately inform themselves of its provisions and who have actual knowledge of its terms." *Id.* We concluded unique circumstances were not shown because the hardship was a result of the intervenor's "own making and was attributable to his failure to make adequate inquiry as to the provisions of the zoning ordinance and his failure to fully disclose the circumstances of joint ownership of [the] lots." *Id.* at 504.

Similarly, the need for a variance in this case is also less compelling than that presented in *Greenawalt v. Zoning Board of Adjustment of City of Davenport*, 345 N.W.2d 537. In that case, an ordinance limited front-yard fences to a height of forty-two inches. *Id.* at 540–41. The homeowner decided to build a six-foot fence after several incidents of vandalism and after receiving a letter from his insurer advising he build a perimeter fence or risk nonrenewal of his insurance policy. *Id.* at 540. After the homeowner had completed ninety percent of the construction, he received notice from the city the fence was in violation of the zoning ordinance. *Id.* at 541. The board of adjustment denied the homeowner's application for a variance to construct the taller fence. *Id.* The district court affirmed the board's denial of the application, and we affirmed the judgment of the district court. *Id.* at 541, 547. We concluded the homeowner had not established any of the three elements. *Id.* at 543–44. We rejected his argument the variance should be granted because he had already expended a significant amount of money in completing ninety percent of the fence. *See id.* at 546 (analogizing to an illegally granted permit that was still revocable notwithstanding that the permittee "expended considerable funds").

Having concluded the Sauls have not established the first two elements of the *Deardorf* standard, we do not reach the issue of whether the Sauls established the variance will not alter the essential character of the locality.

III.

For these reasons, we conclude the board of adjustment acted illegally in granting the Sauls' application for a variance from the county zoning ordinance in the absence of evidence establishing unnecessary hardship. The district court should have sustained the petition for writ of certiorari and annulled the board's decision.

**DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT REVERSED AND REMANDED WITH DIRECTIONS.**

All justices concur except McDermott, J., who takes no part.